HENRY G. FARNSWORTH v. FARWELL, OZMUN, KIRK & COMPANY.[1]

November 22, 1907.

Nos. 15,316—(61).

**Negligence—Evidence.**

> The evidence in an action to recover damages for personal injury examined, and *held* to be sufficient to require the issues to be submitted to the jury.

Action in the district court for Ramsey county to recover $10,000 damages for personal injuries. The case was tried before Olin B. Lewis, J., who directed a verdict in favor of defendant. From an order granting plaintiff's motion to set aside the verdict and for a new trial, defendant appealed. Affirmed.

*Price Wickersham* and *Armand Albrecht,* for appellant.

*Owen Morris,* for respondent.

ELLIOTT, J.

The respondent, while on the premises of the appellant, fell into an elevator shaft, and brought this action to recover damages because of the alleged negligence of the defendant in allowing the shaft to remain open and unprotected. At the close of the evidence the court directed a verdict in favor of the defendant, but thereafter, on motion, vacated the verdict and granted a new trial. The question before us is simply whether there was evidence sufficient to require the case to be submitted to the jury, and, in view of the fact that we have come to the conclusion that there must be a new trial, we abstain from commenting upon the evidence or discussing the question of the negligence of the defendant company or the contributory negligence of the plaintiff.

Briefly stated, the facts are as follows: The appellant, Farwell, Ozmun, Kirk & Co., a corporation, had constructed a large building in which to carry on its business as a wholesale hardware merchant. While the building had not been formally turned over to the company by the contractor at the time of the accident, it seems to have been

[1] Reported in 113 N. W. 897.

substantially completed, and the company was occupying certain upper floors for the purpose of storing new goods as they were delivered. The elevator where the accident occurred was being operated by the company. The building was a nine-story structure, located at the northwest corner of Second and Jackson streets, in the city of St. Paul, with a frontage of one hundred sixty feet on Jackson and about three hundred feet on Second street. It was built on a hillside, so that the alley which ran along the north side of the building was near the fourth floor of the building. Second street is not in the ordinary sense of the term a thoroughfare for pedestrians, but is occupied by railway tracks and used for heavy hauling. On this side of the building two switch railway tracks run into the basement near the southeast corner, and extend on the interior the full length of the south side of the building. These tracks occupy a strip thirty four feet wide, and the space above the tracks extends to the ceiling of the second floor. In the interior of this basement there is a thirty-foot driveway, extending at right angles with the car tracks the full length of the easterly or Jackson street side of the building, which is used exclusively by teams in hauling merchandise to and from the building. The floor of the basement is four feet above the level of the floor of this driveway and the railway track. A few feet west of the driveway entrance there is a small door in the southerly wall of the basement from which steps ascend to the basement floor. On the day of the accident there was a large sign upon this door, which read, "No admission except to employees." The interior of the building, from the basement up, was divided into three sections by two heavy brick fire walls equidistant from the east and west ends of the building and parallel therewith. Near the north and south ends of these walls were cut doorways, which afforded passage from one section to another, and in the middle of each fire wall were freight elevator shafts. On the north side of the building there was an entrance for pedestrians from the alley to the office part of the building. This entrance was so located that it was not visible to a person who stood at the corner of Jackson street and the alley.

On January 9, 1906, the plaintiff was sent by the St. Paul Gas Company, it is claimed at the request of the vice president of the appellant company, to make some changes in connection with the electrical

work in the building. He was directed to go to the building and learn what was to be done. He went to Third and Jackson streets, and proceeded down to the corner of the new building, where he was unable to gain access by a door which, as he testified, seemed to be fastened. After looking up the alley, and not seeing any entrance, he proceeded down Jackson street to the corner near the driveway entrance to which we have referred. Entering the building through this driveway, where hauling was being done, he met an employee of the appellant, who was alleged to have been in charge of all the work on the basement floor, and of him inquired where the electrical work was to be done. By this party he was directed to go upon the basement floor and straight through a doorway, where he would find some one who would give him the information desired. He then climbed upon the basement floor, and went through the door, which brought him into the central section of the building between the two fire walls. Upon reaching the center of this section he had some conversation with another party, after which he proceeded in a westerly direction until he walked into an open elevator shaft and was injured. The entrance to this shaft was cut through the partition between the center and west sections of the floor. The opening was nine feet wide and about nine feet high, being arched over the top. In entering the elevator the passage was through a three-foot wall. The floor of the basement was on a level with the floor of the car when the car was in place. The accident happened about half-past four, and there was evidence tending to show that the light in the vicinity was poor. A person approaching the entrance to the elevator could look through the opening onto the basement floor beyond, and, unless there was something to call his attention to the fact that there was an elevator shaft there, might be justified in inferring that it was merely an arched passageway through the wall.

We have not attempted to state more than an outline of the evidence, but merely to refer to enough to show the issues which were presented in the trial court. At the close of the evidence the court was of the opinion that the plaintiff had no right to enter the building at the driveway entrance on the Second street side and wander around

through an unfinished building in search of the work he had been sent to do. Further consideration of the record convinced the learned judge that this was error, and he therefore granted the motion for a new trial. We think in this he was correct, as upon the evidence it was clearly a question for the jury to determine whether, under all the circumstances and conditions, the plaintiff was justified in entering the building at the driveway entrance and proceeding as directed by one of the appellant's employees. The question of the plaintiff's contributory negligence was also for the jury, and not to be determined as a matter of law.

The case should have been submitted to the jury under proper instructions, and the order granting the new trial, in order that this may be done, is therefore affirmed.