# E. P. CONWAY v. CHARLES H. WOOD & COMPANY.[1]

February 17, 1911.

Nos. 16,857—(221).

**Negligence — questions for jury.**

> Action to recover damages for personal injuries. It was the plaintiff's duty to deliver express packages at defendant's hotel for its guests, which were to be delivered at its baggage room and receipt given by its clerk. He there delivered the packages, and in attempting to go from the room, along what he believed to be a passageway, to the clerk's desk to look for the porter and to get a receipt for his package, he fell into the shaft of the baggage elevator; the door leading to it being then open. Verdict for plaintiff. *Held*, that the defendant's negligence, the plaintiff's contributory negligence, and whether he was at the place of injury by the implied invitation of defendant, were made, by the evidence, questions of fact for the jury.

Action in the district court for Hennepin county to recover $7,500 for personal injuries. The facts are stated in the opinion. The answer admitted that on or about May 8, 1909, plaintiff came to the baggage room of defendant's hotel, for the purpose of delivering certain packages, and while waiting in the baggage room to ascertain if the addressee named on the packages was a guest at the hotel, wandered aimlessly about, opened the door leading into the elevator shaft and fell down the shaft, inflicting the injuries for which he sought damages, but specifically denied that the injuries were caused by any want of care of defendant. The case was tried before Booth, J., and a jury which returned a verdict in favor of plaintiff. From the judgment for $971.97, entered pursuant to the verdict, defendant appealed. Affirmed.

*Morton Barrows*, for appellant.

*Daniel F. Carmichiel*, for respondent.

[1]Reported in 129 N. W. 1045.

START, C. J.

Appeal by the defendant from a judgment of the district court of the county of Hennepin in an action to recover damages for personal injuries sustained by the alleged negligence of the defendant. The sole question presented by the record is whether the trial court erred in denying the defendant's motion, made at the close of the evidence, to direct a verdict for the defendant.

There was evidence tending to show, with others, these facts: The defendant, at the times herein stated, was the proprietor and manager of the West Hotel, Minneapolis, located on the corner of Hennepin avenue and Fifth street. The plaintiff was a driver for an express company, whose duty it was to deliver express packages at the West Hotel and other places in the city. The baggage room of the hotel, where heavy express packages were required to be delivered, was, until shortly before the plaintiff's injury, located on the Fifth street side of the building. He was familiar with this room and its location with reference to the clerk's desk in the lobby, and when he delivered packages at this room the man in charge would give him a slip and he would take it to the clerk and get his receipt signed. There was a passageway from the baggage room to the lobby, where the clerk's desk was located. Before the accident the baggage room was moved to another location in the building, fronting south on the alley. The plaintiff was never inside this room until the day he was injured, May 8, 1909. On that day he had large packages to be delivered to a guest of the hotel, and drove his wagon to the door of the baggage room on the alley, deposited the packages on the floor of the room, and presented to the porter in charge the usual form of a receipt for the signature of the hotel clerk. The porter took the slip, and said he would go to the office and see if the person to whom the packages belonged was in the house, and then left the room. The plaintiff did not notice how or where the porter left the room, or the direction taken by him. He expected the porter to return with the receipt, and waited for him on the wagon. After waiting for a reasonable time he started to find the porter to get his receipt. He went into the baggage room, which was dimly lighted; it being some thirty feet square and nine feet high. It had only one

outside door and window. He noticed a lighted elevator going up, to the left at the rear of the baggage room. It was not the shaft of this elevator into which he fell. The porter was not there.

The testimony of the plaintiff as to what then occurred is this: "I made up my mind I was going to find him" (the porter) "and get my sheet. I started in at the right-hand side of the baggage room at the rear. I seen a door open there, and it looked to me like a passageway. It was dark in there, no light, and I didn't see anybody around in there, and I knew that the clerk's desk was behind that partition there some place—on the other side of that door, it looked to me; and I started through there, and I fell, and that is all I remember. * * * Q. Did you know anything about the existence of the elevator shaft at the place where you fell, before the accident occurred? A. No, sir. Q. Did you see any lights in the baggage room at the time you last went in there before you got hurt? A. I didn't notice any lights at all."

He fell down the shaft of the baggage elevator to the right of the rear of the room. The evidence in some particulars was conflicting, especially as to the amount of the light in the baggage room; but it is ample to sustain a finding by the jury of the evidentiary facts we have indicated.

The claim of the defendant, briefly stated, is to the effect that the plaintiff, under the circumstances disclosed by the evidence, was, if not a trespasser, a bare licensee, who must be held to have accepted the premises as they were, and assumed the risks incident to their unauthorized use. It is quite obvious from the evidence that the plaintiff was in the baggage room for the purpose of making delivery of the packages upon the implied invitation of the defendant, and that while in the baggage room he was neither a trespasser nor a bare licensee; hence the defendant owed him the duty of exercising ordinary care in keeping the premises in a reasonably safe condition. Corrigan v. Elsinger, 81 Minn. 42, 83 N. W. 492; Hyatt v. Murray, 101 Minn. 507, 112 N. W. 881.

Counsel for defendant seems to concede this proposition, but claims that, when the plaintiff attempted to go from the baggage

room to the clerk's desk in the lobby, the relationship of the parties changed, and the plaintiff then, at most, became a bare licensee, and assumed all the risks as a matter of law. It is quite evident that he fell from the baggage room itself through the open door into the shaft. But, this aside, it was a fair question for the determination of the jury whether the plaintiff, in attempting to go from the baggage room to the office of the hotel to obtain the receipt, which was a part of his duty in order to complete the delivery, was acting within the scope of his implied invitation to enter the building. We are of the opinion that whether he was a mere licensee, or acting within the scope of the implied invitation, and whether the defendant was negligent in the premises, were clearly questions to be decided by the jury, and not by the judge as a matter of law.

It is not so clear whether or not the plaintiff was, upon the undisputed evidence, guilty of contributory negligence as a matter of law. The defendant claims that the evidence is conclusive that he was so guilty, and that it was entitled to an instructed verdict in its favor. We are of the opinion, based upon a consideration of the whole evidence, that this question was also one to be decided by the jury under proper instructions, which were given.

Judgment affirmed.

JAGGARD, J., took no part.

BROWN, J. (dissenting).

Plaintiff was wholly unfamiliar with the baggage room. It was dimly lighted, and in groping around therein in search of a passageway to the hotel office, there being no necessity for so doing, plaintiff, in my opinion, assumed the risk of pitfalls and dangers, and was guilty of contributory negligence as a matter of law.