JANET V. AUBIN v. DULUTH STREET RAILWAY COMPANY
AND ANOTHER.[1]

December 17, 1926.

No. 25,536.

**Unprotected trolley poles between car tracks on unlighted viaduct may
become actionable negligence.**

1. The construction and maintenance of trolley poles in the cen-
ter of a street, with the consent of the municipality, may become
such an obstruction as to constitute actionable negligence.

**When question of contributory negligence is one of law and when one of
fact.**

2. Upon the facts stated in the opinion the question of contribu-
tory negligence of a person who drove an automobile into such poles,
in the nighttime, in the presence of dazzling lights from cars going
in the opposite direction, was not one of law but was for the jury.

It is only in the clearest of cases when the facts are undisputed and
it is plain that all reasonable men can draw but one conclusion from
them that the question becomes one of law.

**Blindness of motor driver from dazzling light.**

3. Blindness, from a dazzling light, of an automobile driver who
is killed in a collision may be established by circumstantial evidence.

It is permissible for witnesses driving under substantially like
circumstances to testify as to their experience as bearing upon the
probability of decedent having been so blinded.

It is likewise proper to receive the testimony of a doctor disclosing
the effect of such lights upon the human eye.

**Proof of contributory negligence—charge as to presumption.**

4. Contributory negligence must be proved by a fair preponderance
of the evidence.

One who loses his life in an accident is presumed to have exercised
due care for his own safety.

[1]Reported in 211 N. W. 580.

A charge that this presumption must yield to "clear proof" of contributory negligence is error because it requires a higher degree of proof than a fair preponderance.

Death, 17 C. J. p. 1313 n. 67.
Evidence, 22 C. J. p. 663 n. 37.
Negligence, 29 Cyc. p. 626 n. 26; p. 628 n. 41.
Street Railroads, 36 Cyc. p. 1502 n. 52; p. 1586 n. 30; p. 1594 n. 78; p. 1622 n. 27.

———

See note in 2 A. L. R. 498.
See notes in 33 L. R. A. (N. S.) 1176; 20 R. C. L. 197; 5 R. C. L. Supp. 1090.

Defendants appealed from an order of the district court for St. Louis county, Magney, J., denying their motion for judgment notwithstanding the verdict or for a new trial. Reversed.

*G. A. E. Finlayson, John B. Richards* and *H. E. Weinberg*, for appellants.

*Lewis & Hunt* and *Johnson & Holm*, for respondent.

WILSON, C. J.

In 1902 a 1,200 foot viaduct was erected over certain railroad tracks which crossed Garfield avenue in Duluth. Double street railway tracks were laid and a single line of iron trolley poles set 121 feet apart was erected between the two tracks. They were used continually up to the time of the accident on August 14, 1924. The viaduct was 42.5 feet wide. The poles, which were 7⅝ inches in diameter, were painted white for a distance of 6 feet from the ground. Decedent drove an automobile, in the nighttime, upon the viaduct when two other cars were traveling in the opposite direction. His left front hub touched the first pole and his car ran into the second causing his death and damage to the car. Plaintiff was given a verdict for $8,000. Defendants have appealed from an order denying their alternative motion for judgment non obstante or a new trial.

1. DEFENDANTS' NEGLIGENCE.

The trial court properly determined that the poles were erected and maintained with the authorization and consent of the city. The question of unreasonable obstruction of the street was submitted to the jury. The poles were not lighted; neither was the viaduct. Nor was there any curb, guard rail or protection of any kind about the poles. The paving was rough near decedent's right and smoother near the center of the street. This tended to bring drivers nearer the poles. During the period these poles were maintained prior to the accident, traffic conditions materially changed and the danger from blindness from automobile headlights developed and magnified. It would have been both practicable and inexpensive to move the poles to the curb. The center pole type of construction had become antiquated. Defendants knew these things. The poles were painted in the hope of making the street safer. Obviously there was some risk. Regardless of degree such risk was unnecessary. The permissive authority of the city could not justify the street railway company in locating the poles so as to become an obstruction. It is permissible to draw an inference of want of care unless the risk was so remote that reasonable men in the exercise of ordinary care would not have acted to avoid it. We think the record presents a question of fact which was properly submitted to the jury. Stern v. International Ry. Co. 220 N. Y. 284, 115 N. E. 759, 2 A. L. R. 487; Lambert v. Westchester Elec. R. Co. 191 N. Y. 248, 83 N. E. 977; McKim v. Philadelphia, 217 Pa. St. 243, 66 Atl. 340, 19 L. R. A. (N. S.) 506; Berry, Automobiles (4th ed.) p. 948, § 1062; Phelps v. City of Mankato, 23 Minn. 276; Moore v. Townsend, 76 Minn. 64, 78 N. W. 880; Nye v. Dibley, 88 Minn. 465, 93 N. W. 524; McDowell v. Village of Preston, 104 Minn. 263, 116 N. W. 470, 18 L. R. A. (N. S.) 190; Dun. Dig. §§ 4179, 4180.

2. CONTRIBUTORY NEGLIGENCE.

There is evidence tending to show that decedent was driving from 20 to 50 miles per hour. When he struck the first pole with the hub of his left front wheel it sounded like striking a steel pipe with a heavy hammer. This was heard about 1,800 feet away. The car

zigzagged and continued going fast to the second pole where it collided with such force that it broke the left front wheel; released the front axle from the frame; broke the drive shaft; forced the front seat back to the rear seat; and tore the left front door loose and hurled it 25 feet or more, throwing the driver out. The car came to a stop with the pole standing between the radiator and the left front wheel. The radiator did not leak. The axle was not bent. Much has been said about decedent driving his car after he was blinded by the light from the other cars. But there is no direct evidence that he did. Most of the authorities cited by appellants rest upon facts where the driver being blinded continued his course into an object known to be present. Here it is not shown that decedent knew he was in the presence of the poles before he struck the first one, although he had occasionally traveled this street for several years. The evidence is not satisfactory as to the speed of the car when it hit the first pole nor as it continued to and struck the second. The second car going in the opposite direction was nearer the line of poles than the other. How much effect, if any, the lights had on decedent is in controversy and what inferences may have been drawn from the circumstances in reference thereto were peculiarly for the consideration of the jury. It must be remembered that the cars with their bright lights going in the opposite direction were not directly in front of decedent but on the other side of the street. It is vigorously urged that decedent's failure to avoid the second pole after warning by contact with the first pole must be construed as contributory negligence as a matter of law. But did the driver know he had hit a pole? Did this deflect the car beyond his control? Was that the reason for the car swaying as it advanced? How much, if any, did he reduce its speed? Was he, while in the exercise of due care, blinded by the nearby lights which caused him to swerve into the obstruction? These questions indicate some of the elements present which necessarily characterize our inquiry as one of fact and not of law. It is only in the clearest of cases when the facts are undisputed and it is plain that all reasonable men can draw but one conclusion from them that the question

becomes one of law. Klare v. Peterson, 161 Minn. 16, 200 N. W. 817. The record does not disclose such a situation. The question was for the jury. The question of negligence in the presence of dazzling lights is usually for the jury. Turpie v. Oliver, 21 Alberta L. R. 508; Denver A. M. & P. Co. v. Erickson, 77 Colo. 583, 239 Pac. 17; Shaber v. St. P. M. & M. Ry. Co. 28 Minn. 103, 9 N. W. 575; Williams v. Larson, 140 Minn. 468, 168 N. W. 348; Salemme v. Mulloy, 99 Conn. 474, 121 Atl. 870; Alpert v. Ellis, 236 Mass. 404, 128 N. E. 634; West v. Marion County, 95 Ore. 529, 188 Pac. 184.

3. Testimony was received to the effect that the witnesses had experienced difficulty, when driving on the viaduct at night, in seeing the poles under glare of lights from cars approaching from the opposite direction. The testimony was that the poles were not dimmed completely but that they could probably be seen the least bit. Testimony was also given by a doctor to the effect that lights upon the human eye amount to temporary paralysis of the accommodation of the eye. The claim, based upon objection to the reception of the evidence, is that it is not admissible until a foundation is first laid by a positive showing that decedent was in fact blinded. We are of the opinion that this contention is unsound. The evidence in the case may permit an inference that he was blinded. But whether it did when this evidence was received is not so important. The whole theory of plaintiff's case rested upon circumstances and probabilities tending to lead reasonable minds to such conclusion. All this testimony had a tendency to prove blindness by showing the possibility and probability thereof in an effort to reasonably account for the tragedy. It tended to establish elements in aid of permissible inferences. It was therefore admissible. 1 Wigmore, Ev. (2d ed.) § 460, p. 830; 1 Jones, Commentaries on Ev. § 164; Morse v. M. & St. L. Ry. Co. 30 Minn. 465, 471, 16 N. W. 358; Shaber v. St. P. M. & M. Ry. Co. 28 Minn. 103, 9 N. W. 575; Dun. Dig. §§ 3232, 3253.

4. At the request of plaintiff the court charged the jury:

"Defendants claim and allege that plaintiff's decedent, Oscar Aubin, was himself negligent, and that this negligence was a prox-

imate cause of his death. This defense is known in the law as contributory negligence. The law is that the burden of proving contributory negligence by a fair preponderance of the evidence is on the Defendants. In that connection the court instructs you that where one is killed by the negligence of another, the presumption is that he who was killed was in the exercise of due care at the time of the accident. The presumption is based on the law of nature, the universal and insistent instinct of self-preservation. The presumption, however, must yield to clear proof of his contributory negligence."

Appellants now assail the last sentence therein. Plaintiff's counsel was led into the use of the words "clear proof" because of their use in Lewis v. St. P. M. & O. Ry. Co. 111 Minn. 509, 127 N. W. 180; Gilbert v. City of Tracy, 115 Minn. 443, 132 N. W. 752; Green v. G. N. Ry. Co. 123 Minn. 279, 143 N. W. 722. The expression in these cases was not used with the intention of expressing a required higher degree of proof than the "fair preponderance of the evidence" rule which was affirmed in Carver v. Luverne B. & T. Co. 121 Minn. 388, 141 N. W. 488. Indeed, in the three cases cited the court was discussing the rule to govern the trial judge in making a finding as a matter of law. The third sentence in this request stated the rule correctly as to the proof of contributory negligence. The court mentioned the presumption of due care on the part of decedent. For the purpose of advising how the presumption could be destroyed before the jury as a question of fact the statement was made that it must yield to "clear proof of his contributory negligence." This was an inapt expression. One who loses his life in an accident is presumed to have exercised due care for his own safety. This presumption is comparable to that of right conduct. It may be overcome by the ordinary means of proof that due care was not exercised. Klare v. Peterson, 161 Minn. 16, 200 N. W. 817; Carson v. Turrish, 140 Minn. 445, 168 N. W. 349, L. R. A. 1918F, 154. The presumption merely indicates that which may be assumed without proof. In re Hawkins v. Kronick C. & L. Co. 157 Minn. 33, 195 N. W. 766. It may relate to one or more facts. It

may support all or part of the burden that plaintiff must meet. In death cases the presumption may be stated to the jury. Carson v. Turrish, 140 Minn. 445, 168 N. W. 349, L. R. A. 1918F, 154. But its presence only takes the place of evidence that would accomplish the same purpose. As to contributory negligence the question still remains whether the defendant has established the claim by a fair preponderance of the evidence. The presumption in no way changes the rule. The charge said the presumption required "clear proof." Does this mean a higher degree of proof than by a fair preponderance of the evidence? If so, it was error.

It has been held that "clearly and distinctly proven" required more than a fair preponderance. Gehlert v. Quinn, 35 Mont. 451, 90 Pac. 168, 119 Am. St. 864. Also "clear and satisfactory." Peterson v. Estate of Bauer, 76 Neb. 652, 107 N. W. 993, 111 N. W. 361. The word "clear" may have misled the jury. Preponderance means to outweigh; to weigh more; to overcome. A "clear proof" necessarily means a clear preponderance. It may mean that which may be seen, that which is discernible and that which may be appreciated and understood. In such sense it may not really mean any more than a fair preponderance of proof. It may however also convey the idea, under emphasis, of certainty, and probably would to the common mind. French v. Day, 89 Me. 441, 36 Atl. 909. Some authorities seem to hold that such an expression means substantially "clear and satisfactory evidence," "clear and convincing evidence," "clear and conclusive proof," and "conclusive proof." Freese v. Hibernia Sav. & L. Assn. 139 Cal. 392, 73 Pac. 172. It may be understood as meaning beyond doubt. The expression is equivocal and mischievous. It may be reasonably construed as requiring a higher degree of proof than a fair preponderance. We cannot approve the charge as given. It has been suggested that the same result would have been reached had the proper charge been given. Perhaps so. Perhaps not. We believe this to be such an error as to require a new trial.

In view of the conclusion reached we have not deemed it important to examine the record to determine whether it disclosed facts

requiring the giving of defendants' request No. 3. Other assignments involve questions that are not likely to occur again on a subsequent trial.

The order denying the motion for a new trial is reversed.