JOHN F. LANDY v. OLSON & SERLEY SASH & DOOR
COMPANY.[1]

June 10, 1927.

No. 25,848.

**Decedent's death was due to fall into elevator shaft which defendant should
have guarded.**

Plaintiff's intestate went into defendant's factory on business and
fell into an elevator shaft suffering injuries resulting in death. *Held*:

(1) The evidence was sufficient to justify the jury in finding that he
was an invitee.

(2) The elevator shaft was so located that, as to such invitee, it
was defendant's duty to guard it.

(3) The evidence was sufficient to justify the jury in finding de-
fendant negligent.

(4) Plaintiff's action cannot rest upon G. S. 1923, § 4152, because
the decedent was not an employe.

(5) Decedent's contributory negligence was for the jury. The law
presumes that decedent was in the exercise of due care.

Death, 17 C. J. p. 1189 n. 66; p. 1304 n. 77; p. 1308 n. 36; p. 1311 n. 51.
Negligence, 29 Cyc. p. 442 n. 94; p. 449 n. 66; p. 453 n. 86; p. 457 n. 26;
    p. 640 n. 13.

See note in 2 L. R. A. (N. S.) 757; 24 L. R. A. (N. S.) 246; L. R. A.
    1915E, 731; L. R. A. 1917D, 891; 9 R. C. L. 1258; 2 R. C. L. Supp. 956.

Action in the district court for Hennepin county to recover dam-
ages for the death of plaintiff's intestate. The case was heard before
Baldwin, J., and a jury which returned a verdict for plaintiff. From
an order granting defendant's motion for judgment notwithstanding
the verdict plaintiff appealed. Reversed.

*W. L. Hursh* and *Lindahl O. Johnson,* for appellant.

*Herbert T. Park,* for respondent.

[1]Reported in 214 N. W. 659.

WILSON, C. J.

Plaintiff appealed from an order granting defendant's motion for judgment notwithstanding a verdict for $4,500.

Defendant operates a sash and door factory at the southeast corner of Bryant avenue and Twenty-ninth street, Minneapolis. The original frame part of the factory faces Twenty-ninth street. A new brick addition facing Bryant avenue contains defendant's offices which are accessible from the avenue. The entrance from Twenty-ninth street consists of a small porch with steps, a balustrade on each side and a roof. This was the entrance to the offices prior to the construction of the new building in 1923. Since then a sign has been kept at this door:

"No Admittance

"OFFICE

"On Bryant Ave."

This entrance now opens into a large shoproom. The door is frame with glass panels. About 57 feet through the building from the entrance is a partition wall in which there is an opening about ten feet wide and eight feet high which has a sliding door with glass in the upper half. This leads through a storeroom into the office. About three feet to the left of this door is an opening about six feet wide and eight feet high which also has a sliding door similar in appearance to the other door. This door slides to the left and opens into an elevator shaft and there is a similar opening in the wall at the opposite side of the shaft so that when the elevator is at the floor and the doors are open there is a continuous passage from the old building into the new. In addition to the door the entrance to the elevator shaft is guarded by a lattice gate about three feet in height and constructed so that the lower line, when closed, is about three feet from the floor. The gate runs in a groove and is counterbalanced by a weight over a pulley. This gate is opened by hand but is automatically closed by the elevator's leaving the floor. One going from the shoproom to the office necessarily passes through the elevator opening or through the door.

Decedent took to the factory a window sash for repairs. He entered at the Twenty-ninth street entrance. A workman thus details what occurred: "I * * * asked him what he wanted. He said he wished to have the window repaired * * * the glass being out of it; and I told him he should go to the office and get an order, from whence he should go down into the basement and get his glass, and I directed him to go towards the opening to the office and take the door to the right, and directed him which way to go." A few moments later he was found in the bottom of the elevator shaft suffering from fatal injuries.

1. The owner of real property must use ordinary care for the safety of persons who come thereon by his invitation, expressed or implied, for purposes beneficial to him. Trask v. Shotwell, 41 Minn. 66, 42 N. W. 699; Conway v. Charles H. Wood & Co. 113 Minn. 476, 129 N. W. 1045. But not so as to trespassers and licensees. Id.; Dahl v. Valley Dredging Co. 125 Minn. 90, 145 N. W. 796, 52 L. R. A. (N. S.) 1173; Duffy v. Stratton, 169 Minn. 136, 210 N. W. 866; Ober v. The Golden Rule, 146 Minn. 347, 178 N. W. 586; Mazey v. Loveland, 133 Minn. 210, 158 N. W. 44, L. R. A. 1916F, 279; Schmidt v. George H. Hurd Realty Co. 170 Minn. 322, 212 N. W. 903. What then was the status of decedent? If he wilfully disregarded the admonition of the sign at the door and used an entrance from which all persons except employes were excluded, he could not be an invitee. Flannigan v. American Glucose Co. 11 N. Y. S. 688. Indeed, he would then be acting against the expressed directions of the owner.

Decedent had previously entered defendant's factory at the forbidden door on two or three occasions and had transacted business with defendant. He was Polish and could not read English. One of defendant's employes testified: "Q. Is it a general thing for customers or people to come in there? A. It is the entrance for all the employes; and as a rule people come in and go out as they please in that entrance; as a rule they do."

We are of the opinion that such a record permitted the jury to find that defendant acquiesced in customers' using the entrance and

that decedent was in the shoproom upon defendant's implied invitation.

2. Decedent's position is not aided by the employe's direction which merely indicated how to reach the office. It added nothing to the obligation of defendant. It was a circumstance in support of the claim that customers were allowed to enter and transact business. The implied invitation imposed the duty to care for the safety of the customer in all parts of the building where he might be expected. This embraced a route to the office. Of course if the invitee goes beyond the bounds of his invitation he acts at his peril. Schmidt v. George H. Hurd Realty Co. supra. But in the instant case decedent necessarily came in close proximity to the elevator shaft in going to the office. The construction of the doorway and the doors presented a deceptive appearance. True, if decedent had heeded the direction to "take the door to the right" he would have safely passed. He is dead. He may not have fully grasped the direction. When he approached the opening it may have presented an apparent passageway through the elevator shaft. If the elevator had been at the floor it would have offered a passage. Such a situation where there are two doors, similar in appearance, one opening into a safe and the other an unsafe place, usually presents a jury question. In Dehn v. Buck, 165 Minn. 310, 206 N. W. 435, the doors were not similar in appearance. But however this may be, it must be said that where customers are permitted to frequent and use the passage through the door to the right, so near the elevator shaft and so similar in its appearance, with opportunity to misjudge its opening as a passage, a jury is permitted to say that the owner owes the duty to properly guard the shaft.

3. It is claimed that the evidence fails to show negligence. The claim is that the gate was open and the shaft unguarded. In some respects the evidence is indefinite and unsatisfactory. But it does show that plaintiff fell in the shaft, which would have been highly improbable had the gate been closed. Soon after a workman found the gate open. There is some testimony of this workman's indicating it was open three feet. His testimony unfortunately is indefinite. Whether he intended to modify or qualify his statement that

the gate was open was for the jury.    About two hours after the accident an examination of the gate disclosed it would not self-close as it normally did but would pinch between the guides or in the grooves in which it should slide up and down.    Such failure to function would be obvious as the elevator passed.    In view of the presumption that decedent exercised care on his part, the fact that he fell in the shaft is persuasive that the gate was open.    There is nothing to indicate that he intended to take his own life.    The evidence is sufficient to authorize the jury in finding defendant negligent.

4.    Plaintiff's action cannot rest upon G. S. 1923, § 4152, which is exclusively for the protection of employes.    See title, L. 1913, p. 455, c. 316; Hamilton v. Minneapolis Desk Mfg. Co. 78 Minn. 3, 80 N. W. 693, 79 Am. St. 350.

5.    The contributory negligence of decedent was for the jury. Farnsworth v. Farwell, O. K. & Co. 102 Minn. 371, 113 N. W. 897; Aubin v. Duluth St. Ry. Co. 169 Minn. 342, 211 N. W. 580; Duffy v. Stratton, supra; Ober v. The Golden Rule, supra; Conway v. Charles H. Wood & Co. supra.    The law presumes that decedent was in the exercise of due care.    Fitzgerald v. Armour & Co. 129 Minn. 81, 151 N. W. 539; Gilbert v. City of Tracy, 115 Minn. 443, 132 N. W. 752; Anderson v. D. & I. R. R. Co. 116 Minn. 346, 133 N. W. 805; LaPray v. Lavoris Chemical Co. 117 Minn. 152, 134 N. W. 313; Falk v. C. & N. W. Ry. Co. 133 Minn. 41, 157 N. W. 904; State ex rel. Oliver I. Min. Co. v. District Court, 138 Minn. 138, 164 N. W. 582.

Reversed.