# EBBA M. CARLSON v. F. A. MARTOCCIO COMPANY.[1]

February 14, 1930.

No. 27,605.

*Maugridge S. Robb,* for appellant.

*Fletcher, Timerman & Vennum* and *Donald C. Rogers,* for respondent.

[1]Reported in 229 N. W. 341.

HILTON, J.

Defendant, a corporation, appeals from an order denying its alternative motion for judgment notwithstanding the verdict or for a new trial.

■ Fritz G. Carlson at 10:30 a. m. on June 3, 1927, while riding a bicycle on a street intersection in Minneapolis was struck by an automobile truck owned by defendant and driven by one of its employes. Carlson died shortly thereafter as a result of the collision. The day was misty and the pavement was wet.

The main questions involved in the case are: Was the defendant guilty of negligence, and was deceased guilty of contributory negligence, which was the proximate cause of the accident? If there was sufficient evidence to make questions of fact for the jury on these propositions, then its verdict must stand unless there were reversible errors by the court on the admission or rejection of evidence properly excepted to, or in its charge. The burden of establishing the negligence of defendant was on plaintiff. The burden of proving contributory negligence of the deceased was upon defendant. It is only in the clearest of cases when the facts are undisputed and it is plain that all reasonable persons could draw but one conclusion that the question of contributory negligence becomes one of law. Coffman v. Kummer, 179 Minn. 120, 228 N. W. 751.

■ The locus of the accident was at the intersection of Seventh street north and First avenue north (hereinafter referred to as Seventh street and First avenue). The former runs practically north and south (but jogs to the east about 20 feet after leaving the intersection at the north). The latter runs practically east and west. A third street, Glenwood avenue (formerly called Western avenue) comes into the intersection at the northwest thereof, at approximately an angle of 45 degrees. The street and avenues are each 50 feet wide. This intersection is in a business section of Minneapolis (one of the busiest corners in the loop district) and is one at which the traffic is controlled by a traffic officer and was at the time of the accident. Cars were parked on both sides of Sev-

enth street, north of the intersection. There were double street car tracks on First avenue crossing the intersection and also double street car tracks on Seventh street, coming from south of the intersection, then running to its center and turning northwesterly, proceeding out Glenwood avenue. The traffic officer controlled the traffic by hand signals and the blowing of a whistle. The first hand signal indicated the stopping of a car that was two car lengths from the intersection. This hand signal was shortly followed by a whistle signal, at the giving of which the officer turned one quarter round. Here he faced toward Glenwood avenue and Seventh street, north of the intersection. The last hand signal was for the stopped cars on First avenue to advance.

Carlson, a man 43 years of age, was a janitor in the Metropolitan National Bank. He was proceeding on a bicycle in a northerly direction on Seventh street and into the intersection. The traffic was with him. When the whistle was blown he was three feet north of the First avenue curb line and had the right of way. The witness Roberts saw him in that location at that time. This evidence is not directly disputed. Facing west on First avenue back of the east line of the intersection with Seventh street, there were three stopped cars. Defendant's car (a three-quarter ton Chevrolet truck) was next to the north curb line. By the side of the truck to its left and six inches ahead of it was a sedan (driver not known and not available as a witness) and back of both of these was a Ford owned and occupied by the witness Roberts.

At the time of the last hand signal opening traffic on First avenue, the three cars above referred to proceeded westerly. The driver of the sedan slackened his speed, swerved slightly to the left, stopped and allowed Carlson (who had proceeded northerly in the intersection) to pass in front of him. Roberts also slackened his speed. Defendant's driver did not slow up but proceeded, attaining a speed of at least ten miles per hour at the time the accident occurred 25 feet within the intersection; probably too fast under the circumstances. If attentive he would have noticed that the sedan was slowing up. He testified that he did not see Carlson approaching. He said he looked to the left before starting but could only see a

portion of the intersection because his view was obstructed by the sedan at his left and also because of the cab of the truck. His obstructed view prevented him from seeing Carlson in the intersection. He stated he did not see Carlson when he (Carlson) passed in front of the sedan and did not see him until just before striking him. The officer (witness for defendant) testified that he did not see Carlson in the intersection at the time signals were given; did not know whether he was there or not. His attention immediately later was particularly engaged in stopping an approaching car on Glenwood avenue.

Defendant's car, after entering the intersection, proceeded northwesterly toward Glenwood avenue. Carlson evidently saw the truck at the time he passed in front of the sedan and to avoid being hit by the truck or hitting it turned in a northwesterly direction. After the accident the truck was within about five feet of the northwesterly intersection of Glenwood avenue and Seventh street. The left front and rear wheels of the truck ran over Carlson and his bicycle. He was picked up three feet back of the truck, which was 16 feet long.

The question as to defendant's negligence was for the jury and its finding of such negligence by its verdict must be sustained. The question as to Carlson's contributory negligence was by no means one of law; it too was for the jury. The presumption maintains that deceased was not guilty of contributory negligence. Landby v. Olson & Serley S. & D. Co. 171 Minn. 440, 214 N. W. 659, and cases cited. At the speed the truck and bicycle were going the time involved was only a matter of a split second. Horns were not sounded; there was not time to sound them.

Even if Carlson in proceeding across the intersection had not been acting in accordance with the traffic ordinance and the signals given, his contributory negligence would not be conclusive as a matter of law; it would have been a circumstance for the consideration of the jury. Dohm v. Cardozo, 165 Minn. 193, 206 N. W. 377; 13 Minn. L. Rev. 721. If the truck had the right of way defendant was not absolved from exercising due care under all the cir-

cumstances. Primock v. Goldenberg, 161 Minn. 160, 200 N. W. 920, 37 A. L. R. 484.

The credibility of the evidence given by the driver of the truck was for the jury; it was in many instances negative. No good end would be subserved by a recital of the evidence relative to the changed police report of the accident; the variance between evidence relative to statements made by the traffic officer the day following the accident and his testimony at the trial. These were for the consideration of the jury.

An examination of the case of Sorenson v. Sanderson, 176 Minn. 299, 223 N. W. 145 (cited by defendant) clearly shows that it is in no way in conflict with the decision we have here reached. The facts in that case clearly established contributory negligence as a matter of law within the rule laid down in Coffman v. Kummer, 179 Minn. 120, 228 N. W. 751.

The charge of the court taken as a whole was a fair and correct one. Defendant indulges in a not uncommon practice of selecting for criticism certain portions of the charge separated from their contexts. Some of the requests to charge were not given and were not correct statements of the law under the facts disclosed by the evidence; others not specifically given were sufficiently covered by the general charge.

We have carefully considered all the assignments of error relative to the admission and rejection of proffered evidence and find no grounds for reversal.

Affirmed.

WILSON, C. J. (dissenting).

Defendant's driver testified that when he was about in the middle of the street the man on the bicycle "cut right in in front of me." The traffic officer testified in describing the intersecting traffic:

"When I looked back again there was a man on a bicycle right in there where those manholes are just ahead of a car [being the car traveling to the left of defendant's truck] * * * and directly in front of the bicycle was this truck [defendant's]. The bicycle, if it had kept on going, would have hit the truck about midway or

a little behind the cab. * * * This man had passed this car, * * * swung in to get ahead of the truck, and ran parallel with the truck; and just after they got by me * * * he cut in front of the truck, and I should say it was about two feet in front of him. * * * The truck hit him and knocked him down."

I find no contradiction of this evidence. The bicycle and truck were not traveling at right angles. The truck was going to the north of west. The bicycle came from the south. Because of the truck it turned to the northwest at an angle of about 45 degrees. Decedent necessarily knew of the presence of the truck and he could have avoided the injury by traveling straight ahead with the truck. He was not then in any danger. He could have safely stopped. I think decedent was guilty of contributory negligence as a matter of law in attempting under the circumstances to pass in front of the moving truck. The presumption that a decedent has exercised due care is without application where the actual facts are disclosed.

STONE, J. (dissenting).
I concur in the opinion of the Chief Justice.