## ENGSTROM v. DE WITT.

### No. 9221.

Circuit Court of Appeals, Eighth Circuit.

April 12, 1932.

Burton R. Sawyer, of Northfield, Minn. (William A. Tautges, of Minneapolis, Minn., on the brief), for appellant.

Garfield E. Breese, of Mason City, Iowa (Charles E. Cornwell, of Mason City, Iowa, on the brief), for appellee.

Before STONE and KENYON, Circuit Judges, and CANT, District Judge.

KENYON, Circuit Judge.

Parties will be designated as in the trial court. Plaintiff was a road contractor and on May 8, 1930, he was moving his outfit, which consisted of sixteen or seventeen teams and wagons, from Farmington, Minn., south on the Jefferson Highway, which is also

known as Minnesota state highway No. 1. With his foreman, Brown, he preceded the caravan to Steele Center, Minn., about 6 miles south of Owatonna. The highway was paved and was 18 feet wide with a black mark through the center. These wagons were all ordinary dump wagons used in road work except one had a hay rack, one a water tank, and one a grain tank. Various equipment was piled on some of the wagons. The caravan was proceeding from the north toward the south on the west side of the pavement. Steele Center was a mere village, having on the east of the highway a combined garage and grocery store, on the west side a creamery, and about 1,200 feet north of the creamery a schoolhouse and townhall, between which passed a crossroad which intersected the paved highway. The shoulders of the road, by reason of rains, were too soft to permit the teams and wagons to travel thereon. This caravan of wagons was stretched out for a long distance as there were spaces left between the various teams for the purpose of permitting autos to get in and out in passing.

The caravan reached Steele Center in the morning. Plaintiff had purchased some tobacco for one of the drivers, named Dixon. Plaintiff was a short distance north of the garage on the east side of the highway waiting for Dixon. His foreman, Brown, was with him. Dixon was driving the second or third team of the sixteen, so that most of the teams and wagons stretched away to the north. The testimony showed there were at least ten teams and wagons north of Dixon. As Dixon reached a point near where plaintiff and Brown were, plaintiff stopped him, and then started across the highway to give Dixon the tobacco. He looked to the north and to the south before starting across, saw no auto approaching from the north; thought he saw one to the south. Before he reached Dixon, he looked to the north again and saw no auto. He was then only 4 or 5 feet from Dixon, who was close to the center of the highway. He did not stop when he reached him, merely handed him the tobacco, saying: "Here is your tobacco;" then swung to the left because he thought a car might be coming from the south; took two or three steps on his way back to the east side of the pavement, and was hit by the car of defendant coming from the north. The brakes were immediately applied by defendant when the car hit plaintiff, and it stopped in 30 or 40 feet.

Rapp, one of the drivers of the caravan, testifies that he was 200 feet to the north of plaintiff at the time he was hit, and that defendant's car, when it passed him, was going 40 miles per hour. Another driver, Pearson, testified that his team, at the time plaintiff was hit, was approximately 300 feet to the north, and that defendant's car, when it passed his team, was going 45 to 50 miles per hour. The first team in the caravan was about 300 feet south of plaintiff at the time he was hit.

The trial court at the conclusion of plaintiff's evidence directed a verdict for defendant on the ground of plaintiff's contributory negligence. It did not pass on the question of defendant's negligence.

Did the court err in directing a verdict for defendant? The rule is well settled in the federal courts that, where the evidence as to a matter of fact is of such nature that in an impartial and fair exercise of their judgment reasonable men may honestly reach different conclusions, the question is for the jury.

In Cary Brothers & Hannon v. Morrison, 129 F. 177, 181, 65 L. R. A. 659, this court said: "The question of contributory negligence, like every question of negligence, is ordinarily for the jury; and it is only when there is no substantial conflict in the evidence which conditions it, and when, from the undisputed facts, all reasonable men, in the exercise of a fair judgment, would be compelled to reach the same conclusion, that the court may lawfully withdraw it from them." See, also, Mutual Life Insurance Company of New York v. Hatten (C. C. A.) 17 F.(2d) 889; United States Can Co. v. Ryan (C. C. A.) 39 F.(2d) 445; Skaggs Safeway Stores, Inc., v. Dunkle (C. C. A.) 49 F.(2d) 169.

The question ofttimes is very close, and the anomalous situation is sometimes presented of a majority of a court holding that fair and impartial minds could not differ on the question of contributory negligence and a minority of the court holding that the question is for the jury. However, some power has to determine what all reasonable minds would do and that power is lodged in the courts. A court in so determining should be very certain of its grounds. Interstate Power Co. v. Thomas (C. C. A.) 51 F.(2d) 964.

In considering this question where a verdict was instructed against plaintiff the most favorable aspect of plaintiff's evidence must be ascribed to it. Could reasonable men under this record in a fair exercise of their judgment honestly differ as to the contribu-

tory negligence of plaintiff? The trial court thought they could not; that plaintiff's negligence was clear. It may be that plaintiff was guilty of negligence. We do not pass on that. We think, however, he was not guilty of negligence as a matter of law, and that under all the circumstances this question was for the jury. Many decisions of the Supreme Court of Minnesota are cited by both parties to this controversy, and many more from all the states of the Union, and from the federal courts, could be cited. The circumstances in these various cases are so different that one is seldom an outright authority to guide in another. A slight difference in facts may be controlling. Unfortunately, these automobile accidents seem to be multiplying, and the slaughter and maiming of people by automobiles makes the Monday morning papers read like a report of casualties on a battle field. The pedestrian still has a right to use the streets and highways of the country, and should be accorded the same consideration that he is supposed to accord to a driver of an automobile. There are mutual duties of care. We refer to a few of the many Minnesota cases.

In Kunz v. Thorp Fire-Proof Door Company, 150 Minn. 362, 185 N. W. 376, a traveler coming to a street intersection looked to his right and, seeing no vehicle approaching, proceeded across the intersecting street. The court said: "There is nothing to show that plaintiff did not look with as much caution as does the ordinarily prudent traveler. He was not required to stop to look the length of the street, nor to wait for the whole stream of distantly approaching traffic to pass."

In Yorek v. Potter, 166 Minn. 131, 207 N. W. 188, 189, a party was walking on a paved country highway, and was struck by an automobile approaching from the rear. The court said: "The question of plaintiff's contributory negligence was for the jury. A pedestrian lawfully on a country highway may rely upon the exercise of reasonable care by drivers of automobiles. Failure to anticipate omission of such care does not render him negligent. Nor is a pedestrian bound, as a matter of law, to be continually looking or listening for approaching automobiles under penalty of the charge of negligence if he fails to do so. A pedestrian has a right to walk on any part of a country highway. He must permit an automobile to pass when seasonably notified. The circumstances and the evidence required the submission of the question of contributory negligence to the jury."

Pollock v. McCormick, 169 Minn. 55, 210 N. W. 630, is a case of a pedestrian, walking diagonally across a highway, struck by an automobile. He had looked at the road before crossing to see if cars were coming. The court said: "He had a right to rely upon the exercise of reasonable care by drivers of automobiles who might approach from the rear. Failure to anticipate omission of such care does not render him negligent, nor is he bound, as a matter of law, to be continually looking or listening for approaching automobiles under penalty of the charge of negligence if he fails to do so. Whether plaintiff was guilty of contributory negligence in this case was a question of fact about which reasonable persons might differ. It was for the jury."

In Saunders v. Yellow Cab Corporation. of Minnesota, 182 Minn. 62, 233 N. W. 599, 600, plaintiff was crossing a wide street in Minneapolis. He was struck by a cab and knocked down. It was held his contributory negligence was for the jury. The court said: "Generally, where a pedestrian is run into and injured by an automobile upon a public street or highway, the issues of the negligence of the driver and the contributory negligence of the person injured are questions of fact for the jury."

Other cases, where a pedestrian was struck by an automobile on a street or highway, where the Minnesota court held that the party was not guilty of contributory negligence as a matter of law, are Tobisch v. Villaume, 164 Minn. 126, 204 N. W. 568, and Heikkinen v. Cashen, 183 Minn. 146, 235 N. W. 879.

In Carlson v. F. A. Martoccio Company, 179 Minn. 332, 229 N. W. 341, a bicycle rider was struck by an automobile, and the question of contributory negligence was held for the jury.

In the following Minnesota cases the question of contributory negligence was held to be one of law:

In Cheadle v. James, 181 Minn. 41, 231 N. W. 242, a leading case, plaintiff, without looking to the south, stepped or jumped down onto a narrow part of the road from the truck he was operating, and was struck by defendant's car coming from the south.

In Syck v. Duluth St. Ry. Co., 146 Minn. 118, 177 N. W. 944, there was a collision at a street intersection between an automobile driven by plaintiff and a street car operated by defendant. It appeared that plaintiff entered upon the intersecting street without looking to the right from whence he might

anticipate advancing vehicles, having the right of way over him, and continued his course without looking in the direction from which the vehicles might come, colliding with defendant's street car. Was held guilty of contributory negligence as a matter of law.

In Chinander v. DeLaittre, 171 Minn. 11, 213 N. W. 44, where plaintiff started to walk across a busy street in Minneapolis and was hit by defendant's automobile, the court pointed out that plaintiff must have been proceeding with little effort to protect himself, saying: "He either failed to look, or, looking, paid little attention to what he saw, or deliberately took chances."

Also, Rosenau v. Peterson, 147 Minn. 95, 179 N. W. 647; Sorenson v. Sanderson, 176 Minn. 299, 223 N. W. 145; DeHaan v. Wolff, 178 Minn. 426, 227 N. W. 350.

In Aubin v. Duluth Street Railway Company, 169 Minn. 342, 211 N. W. 580, 582, the court says: "It is only in the clearest of cases when the facts are undisputed, and it is plain that all reasonable men can draw but one conclusion from them, that the question becomes one of law."

The Minnesota rule and the federal rule seem to entirely coincide. It is apparent that in Minnesota the court has placed great emphasis upon the question of a party looking when about to cross a highway or to intersect one, as bearing on the question of contributory negligence. In the cases where contributory negligence was held to be a matter of law for the court, plaintiff failed to look or the physical facts were such that had he looked, if he claimed to have looked, he must have seen the approaching car and have known there was not time to cross ahead of it. There is no question in this case that plaintiff looked. The question is, Did he look at such place or places as a reasonably prudent man should have looked in crossing this highway? Plaintiff testifies he looked before he started across, both to the north and south, and then looked again to the north, but saw no car coming. The last time he looked to the north he was only a few feet from the teamster, to whom he was to give the tobacco. When he first looked to the south, he thought he saw a car coming. He could see a long distance. The caravan presumably occupied about half of the pavement so he was crossing over a distance of about 9 feet. After looking to the north the last time, he kept going, passed the tobacco up to Dixon, did not stop, but turned to the south and looked in that direction because of the car which he had thought he saw when he first looked. He took two or three steps on the way back, and testifies he was just going to look to the north, after looking to the south, when he was struck by defendant's car. There was some diversion of his attention by the supposed car coming from the south. The caravan must have obstructed his view to the north. There were the spaces between the different wagons where an automobile might have been when he looked, although that is somewhat improbable. The interval, however, between the time he looked and when he was struck by the car was very short. He was not required, as a matter of law, to keep looking all the way across the highway, and he was just as much called upon to look to the south as to the north.

Possibly, in view of the speed at which automobiles are traveling along the highways of the country with a reckless disregard of peoples' lives, a party about to cross a highway should either keep looking, first in one direction and then in the other, or employ somebody to look for him or to assist him across before he attempts the hazard of crossing an ordinary highway in these times. As yet, however, the law does not require that degree of care.

In determining whether the circumstances are such that as a prudent man he should have looked again to the north at the time he delivered the tobacco to the teamster, or be held guilty of contributory negligence as a matter of law, a court ought not to split seconds or measure steps taken and distance away of an approaching car with exactitude, and determine a case on just the second that a pedestrian might have looked and avoided injury. Of course, the pedestrian must act as a reasonably prudent man, and should look at such time as such prudent man under all circumstances would look, and that is ordinarily a question for the jury to determine. We are not prepared to say as a matter of law that plaintiff was guilty of contributory negligence because he did not stop and look before he started to retrace his steps across the pavement, in view of the fact that he had looked just before he reached the teamster. It may have been negligence for him not so to do, but that is for a jury to determine.

Defendant argues that, regardless of the question of contributory negligence, there is no evidence to show any negligence on the part of the defendant. While the court did not pass on this question, we are satisfied that the question of defendant's negligence was also one for the jury, and that under this record we should not, if that question is

before us, hold that there was no negligence whatever shown as to defendant.

For the reasons herein stated, the judgment of the trial court must be reversed, and the case is remanded for further proceedings in harmony with this opinion.

Reversed and remanded.