CHRISTINE NYGREN v. MINNEAPOLIS STREET RAILWAY COMPANY.[1]

March 26, 1954.

No. 36,166.

---

[1]Reported in 63 N. W. (2d) 560.

*Freeman, Larson & Peterson* and *Frank X. Cronan,* for appellant.
*Sullivan, Stringer, Donnelly & Sharood,* for respondent.

NELSON, JUSTICE.

Plaintiff, Christine Nygren, brought suit against the Minneapolis Street Railway Company to recover for damages sustained as the result of her being struck, while a pedestrian, by a bus owned and operated by defendant company. The case was tried in the district court for Hennepin county, and the jury returned a verdict in favor of plaintiff. The defendant company appeals from an order of the court below denying its motion for a new trial.

In considering the questions raised here by defendant, the most favorable aspect must be ascribed to plaintiff's evidence.

Plaintiff at the time of the accident was a widow, 73 years of age, residing at 2740 Twenty-seventh avenue south, Minneapolis, Minnesota. On the date of the accident she boarded one of defendant's buses at Seventh and Hennepin in said city around three o'clock in the afternoon. She had made a purchase downtown of two packages of coffee weighing five pounds each to send to relatives in Sweden, and she carried them with her in a shopping bag. She intended to proceed east on Franklin avenue as far as Twenty-seventh avenue and at that point to change and board a southbound streetcar which would discharge her at a point near her home.

On the day in question, when the bus approached the intersection of Franklin avenue and Twenty-seventh avenue traveling easterly, it stopped at a point approximately 65 feet back from the west crosswalk of the intersection near the center of the street, about where the old streetcar tracks were located. There the motorbus operator opened the doors and discharged the passengers without proceeding, or waiting to proceed, to the south curb and up to the west cross-

walk. When the motorbus was thus stopped, there was ahead of it to its right and near the curb a panel truck. Ahead of the truck was another bus, near the curb and just back of the west crosswalk. Those vehicles were stopped at that point awaiting the signal to proceed across. The ordinary place or point for the operator of the bus to discharge his passengers was at the curb near the crosswalk, but it appears from the testimony that the operator here intended to turn to the left to go north onto Twenty-seventh avenue and that he stopped at the point where he did because it was advantageous to him in making the turn. There was at the time a two- to three-foot embankment of snow along the south curb of Franklin avenue across from the point where the plaintiff was discharged.

Although the driver of the bus testified that the plaintiff was the only passenger discharged from the front door at this point, several witnesses testified that there were from three to five or six other passengers discharged from the front door at the same stop. Among them was a woman who lived in the same vicinity as plaintiff, who saw her on the bus and who, with other passengers, proceeded around the front of the bus to the left as plaintiff did, going northerly across the street for the purpose of boarding a southbound streetcar on Twenty-seventh avenue.

When the plaintiff alighted from the front door of the bus, it was standing still; and it was standing still when she proceeded to walk in front of it, turning to her left to cross Franklin avenue to the north curb. The testimony is that the other passengers did the same with the exception of one who proceeded across the snow to the curb and sidewalk on the south side of Franklin avenue. When the plaintiff was at a point somewhere in front of the bus, it started to move forward without any warning audible or otherwise. Plaintiff testified that the bus then struck her on the right leg and that her right leg was injured by the bus running into her and over a part of her leg and foot. She also testified that her left leg was hurt, that it was bruised and sore especially around the knee, but that this leg was not fractured. Her testimony indicated a somewhat confused memory with respect to which leg met the first

contact with the bus. The injury to her right leg aggravated a diabetic condition which made amputation necessary later.

None of the plaintiff's witnesses, including the woman who got off the bus at the same time and several students who were proceeding easterly on the south sidewalk of Franklin avenue, saw the accident the instant it happened. None of them saw her fall or saw her at the time she was struck by the bus. Their testimony was that they saw the passengers being discharged and that nearly all proceeded to the left in front of the bus to cross the street as plaintiff did; and there was testimony that as she proceeded she was carrying her shopping bag. They first saw that there had been a collision between the bus and a pedestrian when they heard a scream, and then they witnessed the result of the accident.

The driver of an oncoming westbound bus on Franklin avenue testified for the defendant and stated that he signaled the driver of the bus that collided with plaintiff to stop and that the bus was stopped and backed up. The driver of the defendant's bus stated that he started up pursuant to the traffic signals at the intersection. That there was no warning or signal given by the operator of the bus has been practically conceded. The driver of the westbound bus testified that he saw the plaintiff cross in front of the bus only one foot from its front, where she would have been in a blind spot to the driver. He also testified that he saw the plaintiff fall rather than being struck by the moving bus. The driver of defendant's bus admitted in his testimony that he knew from past experience that many passengers alighted at this intersection and crossed to the north in order to make the transfer to a southbound streetcar. He also testified that he did not at any time see plaintiff, either immediately after she got off the bus or when upon the street crossing in front of the bus.

The defendant made a motion for a directed verdict at the close of all the testimony, which motion was denied. The defendant also made an oral request, which was taken down by the court reporter, that the court charge the jury in respect to M. S. A. 169.21, subds. 1 and 3, of the traffic code. This was denied by the court. The record shows that this request was made in chambers prior to

any jury argument. No written requests were made and submitted to the court, and no objections were made or exceptions taken to the charge. After the trial court completed its charge, counsel on both sides were asked whether there were any suggestions or corrections, and the reply was as follows: On the part of the counsel for the defendant, "No, your Honor, the defendant is satisfied." On the part of counsel for the plaintiff, "Not for us."

The trial court in his instructions read only § 169.19, subd. 3, from the traffic code, which reads as follows:

"Starting parked car. No person shall start a vehicle which is stopped, standing, or parked unless and until such movement can be made with reasonable safety."

The trial court proceeded on the theory that the right-of-way rule was not applicable since neither the bus nor the injured pedestrian were at the crosswalk and since the bus was standing still when plaintiff started to cross in front of it. Instead, the court submitted the case under the rules of ordinary negligence, leaving the question of the alleged negligence of defendant as a proximate cause of the accident and the alleged contributory negligence of the plaintiff as a proximate cause thereof in any degree to be determined by the jury. This was subject only to the further instruction on the part of the court to the effect that, if the jury should find from the testimony that there was no contact between the bus and the plaintiff causing the fall and thereby the resulting injury, that would end the case since defendant would not be liable but, if they should determine without basing their finding on speculation that she fell because of contact with the bus, then their determination would thereafter be made entirely upon the questions of negligence and contributory negligence. The trial court correctly adopted the rule laid down in the case of Wright v. Minneapolis St. Ry. Co. 222 Minn. 105, 23 N. W. (2d) 347, that the owner or operator of a motor vehicle is not entitled to the benefit of the statutory right-of-way rule where the vehicle was standing still on the street when a pedestrian had already commenced to cross in front of it. The privilege conferred by the right-of-way rule is that of an immediate crossing by a

moving pedestrian or vehicle, not of a future crossing by a standing one after first starting and moving. See, also, Chapman v. Dorsey, 235 Minn. 25, 49 N. W. (2d) 4; Peterson v. Minneapolis St. Ry. Co. 236 Minn. 528, 53 N. W. (2d) 817; Heflin v. Swenson, 181 Minn. 277, 232 N. W. 265; LeVasseur v. Minneapolis St. Ry. Co. 221 Minn. 205, 21 N. W. (2d) 522; 35 Minn. L. Rev. 369, *et seq.* .

The trial court properly refused defendant's requested instructions to charge the jury in accordance with § 169.21, subds. 1 and 3. Since defendant stated to the court at the close of the charge that it was satisfied and since no exceptions were taken thereto as given, it is now the law of this case. Where a trial court in its charge refuses to give a party's requested instructions and the court charges the jury in accord with the ordinary rules of negligence, if no objections or exceptions are taken to the instructions as given and if no specific errors therein are alleged in the assignment, such instructions to that extent become the law of the case for purposes of appeal. We are unable to see that any prejudice resulted to defendant from the charge. See, Smith v. Hendrickson Post 212, 241 Minn. 46, 62 N. W. (2d) 354; Rule 51 of the Rules of Civil Procedure.

Defendant by its other assignments does not claim any error whatever on the part of the court's charge with respect to fundamental law or controlling principle. Assignments 2 and 3 simply state that the trial court erred in denying defendant's motion for a directed verdict and that the trial court erred in denying defendant's motion for a new trial.

While the plaintiff here was crossing the street at a place other than a regular intersection, she was not, necessarily, negligent in doing so. The plaintiff, as pedestrian, and the motorman bore equal duties in the use of the street here; namely, the exercise of ordinary care under the circumstances. The motorman was bound to maintain a lookout for people where he ought to know they are likely to be. This is especially true with reference to passengers discharged from his bus when he is so situated, either because of his own size, the manner in which the motorbus is constructed, or the location where he has stopped it, that he cannot clearly see the street ahead to determine whether it is safe to proceed. Ordinary or reasonable

care under those circumstances requires that he make such an observation as will enable him to proceed safely or give adequate and timely warning of his intention to proceed so that those who might be endangered by his movements may escape or avoid the dangers incident thereto. The plaintiff, in crossing the street as she did here, was required to exercise due care for her own safety and yield the right of way to moving automobiles, streetcars, and buses approaching on the street. At the time in question, the defendant company's motorman, having stopped and discharged the passengers where he did, had no immediate greater right upon the street or greater right to its use than did the plaintiff. Each owed the same duty—the exercise of ordinary care under the circumstances.

It was held in Anderson v. Minneapolis St. Ry. Co. 42 Minn. 490, 44 N. W. 518, that a motorman's first duty, with respect to operating and managing his streetcar safely, is to the public. A motorman is said to be guilty of negligence if he proceeds blindly. See, Chicago City Ry. Co. v. Strong, 129 Ill. App. 511, affirmed, 230 Ill. 58, 82 N. E. 335; Wright v. Minneapolis St. Ry. Co. *supra.* In the latter case it was held that, while there are obvious differences between a streetcar and an automobile, the rule with respect to driving blindly should be the same regardless of the kind of vehicle. Rintala v. Duluth, W. & P. Ry. Co. 159 Minn. 499, 199 N. W. 562.

3. Any violation of a traffic rule or traffic law in this state is prima facie negligence, but it is not negligence per se. In the final analysis this case must stand or fall on its own particular set of facts. On the state of the record it cannot be said that the plaintiff was guilty of contributory negligence as a matter of law. The questions of negligence and contributory negligence here were clearly for the jury. LeVasseur v. Minneapolis St. Ry. Co. *supra;* Wright v. Minneapolis St. Ry. Co. *supra;* Kunz v. Thorp Fire-Proof Door Co. 150 Minn. 362, 185 N. W. 376; Yorek v. Potter, 166 Minn. 131, 207 N. W. 188; Pollock v. McCormick, 169 Minn. 55, 210 N. W. 630; Saunders v. Yellow Cab Corp. 182 Minn. 62, 233 N. W. 599; Carlson v. F. A. Martoccio Co. 179 Minn. 332, 229 N. W. 341; Heiden v. Minneapolis St. Ry. Co. 154 Minn. 102, 191 N. W. 254; Peterson v. Minneapolis St. Ry. Co. *supra.*

It is only in the clearest of cases where the facts are undisputed and it is plain that all reasonable men can draw but one conclusion from them that the question for determination becomes one of law for the court. Aubin v. Duluth St. Ry. Co. 169 Minn. 342, 211 N. W. 580; Engstrom v. De Witt (8 Cir.) 58 F. (2d) 137.

For the reasons herein stated the order of the trial court must be and it is hereby affirmed.

Affirmed.