DR. MARTIN R. HENRY v. CARL LUDWIG HALLQUIST.[1]

March 25, 1948.

No. 34,568.

[1]Reported in 31 N. W. (2d) 641.

40

*Paul D. Stratton, Tom Bergin,* and *Sidney S. Feinberg,* for appellant.

*Freeman & King* and *Robert L. Hoppe,* for respondent.

THOMAS GALLAGHER, JUSTICE.

Action for injuries sustained by plaintiff on April 3, 1945, at about 9 p. m., when defendant's automobile collided with plaintiff's car as plaintiff was standing near his car while it was parked on highway No. 169 between Minneapolis and Shakopee.

At the close of the testimony the court granted defendant's motion for a directed verdict, stating that it was "forced to the conclusion * * * that the plaintiff has been guilty of contributory negligence, which bars any recovery on his part." From an order denying plaintiff's motion for a new trial, this appeal is taken.

The evidence discloses that on April 3, 1945, at about 9 p. m., plaintiff, traveling south between Minneapolis and Shakopee, brought his car to a stop on the west side of highway No. 169, a concrete, three-lane highway, with a paved portion 27 feet wide. The shoulder on the west side of the highway is 9 to 12 feet wide, of substantial gravel construction, with adequate room for a car to leave the pavement and park thereon. (An ambulance and a heavy truck which arrived shortly after the accident had no difficulty in parking there at that time.) A heavy, wet snow was falling, which rendered the highway slippery and made visibility poor and driving conditions generally hazardous.

Plaintiff had stopped to remove the snow which had accumulated on the windshield and was obstructing his vision. The rear lights of his car were somewhat dimmed because covered with snow. He did not look to see where he had stopped, but he concedes that his car was on the paved portion of the highway. Witnesses testified, without substantial variation, that the car was parked about four feet from the right edge of the pavement, with the left wheels about one foot within the center lane. Plaintiff then got out and remained to the left of his car for two to four minutes, removing snow from the windshield, without making any attempt to drive his car onto the graveled shoulder to the right. The collision occurred shortly thereafter when defendant's car, driven by defendant, ran into the rear of plaintiff's car, pushing it against plaintiff and causing his injuries.

Defendant testified that because of poor visibility he did not see plaintiff's car until shortly before the collision; that he was then unable to pass it to the left because of a car approaching from the opposite direction; and that he sideswiped plaintiff's car in attempting to swing to the right and pass it on the graveled shoulder.

In the memorandum made a part of the order denying plaintiff's motion for new trial, the trial court summarized, as follows, plaintiff's testimony upon which the order directing a verdict against him was based:

"It appears from the testimony of the plaintiff himself when he left Minneapolis, it was snowing very hard and that shortly before he reached the point where the accident occurred, 'My vision was shut off by an accumulation—a sudden accumulation of snow on the wind-shield * * * I was completely blinded so far as seeing to drive.' It further appears from plaintiff's testimony that he turned somewhat to the right, stopped his car, put it in reverse, got out and proceeded to wipe the snow and ice off the wind-shield; that he looked once to the rear, as he got out of the car, and saw no traffic approaching from that direction * * *; that he stood there on the pavement two, three or four minutes, trying to clear the wind-shield * * *; that he did not know whether all of his car was on the pave-

ment after he stopped, but that, before stopping, he felt the rise in the pavement and immediately stopped, and that he did not know while in the car or out of it, how much of the car was on the pavement or where it was * * *.

"The testimony further continues, 'So you are not telling the jury you drove off onto the shoulder any number of inches or any distance at all; in that respect, you are making no claim?' Answer, 'No; you see my vision was completely obscured. I turned to the right, and felt my front wheels hit this rise at the edge of the pavement,' and that the rise referred to was 'part of the pavement,' and that he did not remember looking to see whether any part of his car was on the shoulder or not, during the two, three, or four minutes while he was working at the wind-shield * * *. That he could have looked during those two, three, or four minutes to see exactly where his car was parked, but he does not remember whether he did that at all * * *; that he didn't know that any part of his car went out on the shoulder adjoining the pavement, and admitted that it was 'evidently on the pavement' * * *.

"Plaintiff admitted that if he had looked, when he got out of his car, he could have seen that there was a shoulder adjoining the pavement upon which he could have driven, his answer to a question along that line being, 'Yes, I could have looked to see exactly where the car was parked' * * *.

*     *     *     *     *

"In such a setting, the plaintiff clearly failed to exercise such care as a person of ordinary prudence usually would have used under the same or similar circumstances. In a blinding snow storm, he got out of his car on the pavement, gave one look to the rear, and then continued for two, three, or four minutes to work on the windshield, without looking again to see if any one was coming up from the rear on that heavily traveled highway.

"Having had a clear choice between an available safe course of action, by driving out on the shoulder, and a very dangerous one, by stopping short on the pavement under all the conditions then existing, he deliberately chose the latter, and must take the consequences."

This case appears to be governed by our decision in Dragotis v. Kennedy, 190 Minn. 128, 250 N. W. 804, which likewise involved parking on a highway and wherein the court likewise directed a verdict against plaintiff on the ground that his contributory negligence appeared as a matter of law. There, the facts disclosed that the driver of the car had stopped it on the pavement in the right-hand traffic lane of a two-lane highway, with the left wheels within two feet of the center line of the pavement, making no effort to get onto the shoulder, which was adequate in width for that purpose. Thereafter plaintiff, who was a guest passenger in the car, proceeded to assist the driver in changing a tire. It was drizzling, and visibility was reduced to a radius of not to exceed 30 feet. The car driven by defendant ran into the rear of the parked car in a manner somewhat similar to that in the instant case. Approving the trial court's direction of verdict against the plaintiff, we stated (190 Minn. 130, 250 N. W. 805):

"We assume that defendant Anderson [driver of the eastbound car] was negligent. It is obvious that defendant Kennedy [driver of parked car] was grossly so. With opportunity to get off the road for a tire change, it is bad enough, the conduct utterly inexcusable both as discourtesy and negligence, to obstruct a highway in the daytime as Kennedy obstructed the road on this occasion. Where darkness, wet pavement, and the absence of tail-light or other signal to warn approaching traffic are also factors, it so clearly amounts to gross negligence as to defy further attempts at polite characterization. Plaintiff, not lacking in discernment or other mental capabilities, without protest, actively participated in Kennedy's conduct. Moreover, he put himself within a foot or so of the center line of the pavement, standing or 'squatting,' with the rays of the flashlight turned downward, ignoring or deliberately risking the danger of his situation and that to other cars coming from the west. * * *

"There is no help for plaintiff in the rule that ordinarily one may rely upon the exercise of due care by others. That rule has no application where it is plain, as it should have been to plaintiff, that even the exercise of great care by others may not prevent injury. It is

not due care to depend upon the exercise of care by another when such reliance is accompanied by obvious danger."

In subsequent decisions, while the Dragotis case has been distinguished, the distinctions made have been due to the absence of facts upon which that case depended and which were present even more directly in the instant case. Thus, in Allanson v. Ceynar, 203 Minn. 93, 96, 280 N. W. 6, 7, we stated:

"* * * defendant relies on cases where the person injured stands in the traffic lanes next to automobiles there stalled either without lights or under atmospheric conditions limiting visibility. [Citing Dragotis v. Kennedy] * * *. In the instant case, although the night was dark, no factor limiting the efficacy of automobile lights has been shown to exist. The Karn car was substantially off the pavement, and its taillight was functioning. Plaintiff was eight feet to the rear of the Karn car and six feet or more from the edge of the pavement. He was therefore well off the traveled portion of the highway."

In Erickson v. Morrow, 206 Minn. 58, 61, 287 N. W. 628, 630, we stated:

"* * * Defendant points with confidence to Dragotis v. Kennedy * * *; but the facts there were that the driver of a car with a deflated tire stopped the car in the lane of travel to make repairs, there was no taillight burning, the night was dark and drizzly, the visibility poor, and the plaintiff, a guest passenger, * * * standing near the center line of the highway, made no effort to look for approaching cars * * *."

In Anderson v. Johnson, 208 Minn. 373, 375, 294 N. W. 224, 226, we again distinguished the Dragotis case, as follows:

"The present case is distinguishable from Dragotis v. Kennedy, * * * relied upon by appellants. There the night was dark and misty and visibility poor. The parked car had no taillight. The party injured was standing near the center of the highway holding a flashlight * * *. In the case before us plaintiff was standing near the

outside edge of the pavement. The night was clear, and there was testimony * * * that the taillight on the Kutches truck was lit."

In Corridan v. Agranoff, 210 Minn. 237, 240, 297 N. W. 759, 761, we stated:

"* * * Defendant cites and relies on Dragotis v. Kennedy * * *. In the Dragotis case the plaintiff undertook to assist in repairing a flat tire while the car stood in the lane of travel on a dark, rainy night. He knew it would take some time. He stood with his back turned to the lane of travel the car blocked."

In the instant case, the facts indicating negligence on the part of plaintiff are far stronger than in the Dragotis case, and clearly distinguishable from the facts in the subsequent cases above cited, wherein we held the question of contributory negligence was for the jury.

Here, notwithstanding poor visibility and the hazardous driving conditions occasioned by the wet, heavy snowfall, plaintiff parked his car on a main paved highway, with the rear lights dimmed by snow. He then got out of his car on the left side, stationed himself in or adjacent to the center lane of the highway, and, without observing approaching traffic, proceeded to remove the snow from the windshield of his car. He made no attempt to remove his car from the highway to the shoulder on the west, where there was ample room to park. His actions in this respect were not only hazardous to himself, but created a dangerous condition for all drivers using this highway on the night in question. We hold that under the circumstances here present plaintiff's actions were such as to establish as a matter of common law, separate and apart from statutory regulations with reference to parking, that his negligence was a proximate cause of the accident, making it mandatory upon the trial court to direct a verdict against him. See, also, Fortman v. McBride, 220 Iowa 1003, 263 N. W. 345; and Descombaz v. Klock, 58 S. D. 173, 235 N. W. 502.

Affirmed.