RAYMOND KEDROWSKI, EXECUTOR, SUBSTITUTED
FOR SIMON KEDROWSKI, DECEASED, v.
BEN CZECH AND ANOTHER.[1]

March 4, 1955.

No. 36,457.

[1]Reported in 69 N. W. (2d) 337.

112

*Warren B. King, King & MacGregor,* and *Thomas J. Burke,* for appellants.

*Harry E. Burns* and *Sydney A. Gross,* for respondent.

NELSON, JUSTICE.

Plaintiff brought this action to recover damages to his person and his automobile arising out of a collision between defendants' car and that of the plaintiff. The defendants counterclaimed for car damages. At the close of the testimony, defendants moved for a directed verdict on the ground that plaintiff was contributorily negligent as a matter of law and therefore not entitled to recover. The motion was denied by the trial court. The jury returned a verdict in favor of plaintiff for $7,143. Judgment was entered thereon, and defendants appeal from the judgment.

Viewing the testimony in the light most favorable to the plaintiff, since the most favorable aspect must be ascribed to plaintiff's evidence, it appears that the accident occurred December 18, 1952, at about 7:30 p. m. The night was clear, but no moon was in sight. The plaintiff, a machinist by trade, who was 56 years of age at the time, was driving his Ford automobile in a northerly direction on a county graveled road toward the village of Opole, in Stearns county, traveling at a speed of approximately 30 miles per hour. As he approached the intersection of this road with the St. Stephens county road, the car lights suddenly went out without any prior warning. He found himself in darkness and he could not see the roadbed. Becoming excited, he immediately slammed on the brakes as he thought he was going off the right shoulder; then he pulled to the left and came to a stop in the middle of the road just beyond the intersection with the St. Stephens road, his car facing "west north." The motor was dead when he came to a stop. He tried to get the car off the road with the starter but it wouldn't work. He then raised the hood, checked the wiring, and used extra fuses. The lights came on twice, turned blue, and went out.

A car approached traveling in a southerly direction; he signaled it with his flashlight; it slowed down but did not stop in passing by his standing car. Just at what point in his attempts to find the trouble this occurred is not clear from the testimony. After this car had gone by he dropped his flashlight and broke it. He then tried to push the car off the road but was unable to move it.

Plaintiff next got out a trouble light that was wrapped in a bundle and tried to unwrap it. While doing this, he saw the defendants' car approaching from the south a quarter of a mile away and again when it came into sight about 400 feet away. In the meantime he continued his efforts to get the trouble light into operation while watching this car approach. His testimony is that he was standing on the north side of his car near the hood as he saw defendants'˙car swing to the west side of the road, and that, when he saw the defendants' car about 25 feet away swing back toward the east side of the road instead of passing on the west side, he turned and ran straight up the road to the north. He then turned to the left when he heard the crash and it was then he was hit by the defendants' car.

The plaintiff testified that the car driven by the defendant Ben Czech was traveling 35 to 40 miles per hour and that he did not slow down as he approached the stalled car. The width of the road at the point where the plaintiff's car came to a stop was 33 feet. The stalled car straddled the approximate center of the road. Plaintiff testified that there was plenty of room, about eight feet, on the west side for a car to go by; that just a few feet to the south of the stalled car on the east side of the road there was the dead-end intersection of the St. Stephens road with this road and on the west side of the road at the point of this intersection there was a driveway into a pasture. The plaintiff admitted that he was thoroughly familiar with this road area and intersection as did the defendant Ben Czech. There was no explicit testimony regarding the presence of ruts in the road, but the defendant Ben Czech testified that cars on this road traveled in one track or lane.

The defendant Ben Czech was the sole occupant of the other car. He testified that the plaintiff was standing between his stalled car and the west side of the road so that he could not pass on that side and was forced to turn back to the right when 25 feet away, that is to the east side of the road. There is a conflict in the testimony between plaintiff and this defendant as to where the plaintiff was standing when the defendant driver claimed that he was forced to turn back to the right after having first turned to the left in ap-

proaching the stalled car. There is testimony that the lights on the defendants' car were in good working order and that there was good vision ahead for at least 200 feet on the night in question. In fact, the defense so admits. The defendant Ben Czech testified that he did not see the plaintiff's car until he was approximately 100 feet away and then traveling from 35 to 40 miles per hour. The testimony indicates that there was no marked slackening of speed on his part before the collision occurred.

After the collision the plaintiff was described as in a sitting position approximately in the center of the road just north of the intersection. He had a broken leg and wrist. He was about three or four feet back of defendants' car and three or four feet closer to the center of the road. The plaintiff pulled himself with his broken leg and wrist some 14 feet over to the door of defendants' car, opened it, and asked to be taken to the hospital in Little Falls, this one being closer than the one in St. Cloud. The plaintiff recognized the defendant Ben Czech right away and told him he thought his leg was broken. Shortly thereafter Vincent and Frank Warzecha arrived by car at the scene of the accident, and the plaintiff again suggested that he be taken to the hospital in Little Falls. A little later the defendant Ben Czech and Vincent and one Claude Warzecha took the plaintiff to the hospital at Little Falls as suggested by him. While on the trip to the hospital the plaintiff talked to them and they said that his talk made sense, that he mentioned his pain and inquired how far they were getting along on the road, that he told them what door of the hospital to take him to because an elevator was located there, and that he also asked for Dr. Glenn Schmitz as his doctor.

Defendants' assignments of error are (1) that the court erred in denying defendants' motion for a directed verdict, and (2) that the court erred in denying defendants' motion for judgment notwithstanding the verdict.

The defendants argue that the plaintiff was guilty of contributory negligence as a matter of law in the following respects: (1) Because of intoxication; (2) because of voluntarily stopping his vehicle on the traveled portion of the highway so as to obstruct traffic from all

directions when he easily could have stopped on the right shoulder; (3) failing to move his vehicle from its dangerous position; and (4) remaining by his darkened vehicle while defendants' car bore down on him.

■ The appeal here is from the judgment and there is no motion for a new trial. Under the circumstances the only question for review by this court is whether the verdict is reasonably supported by the evidence. This court has repeatedly said that, when an appellant moves the court below for judgment notwithstanding the verdict, as defendants did here, there is admitted for the purpose of the motion the credibility of the evidence of the adverse party and every inference which may fairly be drawn from such evidence. That view of the evidence most favorable to the adversary must be accepted. Therefore, the only question for consideration is whether it clearly appears from the record that plaintiff is not entitled to recover. This court in its review must therefore confine itself to the question of whether this verdict in favor of the plaintiff is reasonably supported by the evidence under any applicable theory of law, testing the evidence by admitting the credibility of the plaintiff's witnesses and viewing the evidence in the most favorable light. Fredrickson v. Arrowhead Co-op. Creamery Assn. 202 Minn. 12, 277 N. W. 345; Taylor v. Northern States Power Co. 196 Minn. 22, 264 N. W. 139; Smith v. Gray Motor Co. 169 Minn. 45, 210 N. W. 618; Smith v. Otto Hendrickson Post 212, American Legion, 241 Minn. 46, 62 N. W. (2d) 354; Sundeen v. Barthel, 241 Minn. 398, 63 N. W. (2d) 267.

■ On the question of plaintiff's intoxication constituting contributory negligence as a matter of law, we have already referred to what took place during the trip to the hospital at Little Falls and plaintiff's statements made on the way. Claude Warzecha testified that they could smell liquor on the plaintiff's breath during the ride into Little Falls, and also that a person could tell that the plaintiff was intoxicated "By the looks of his eyes, if he wasn't hurt * * *."

The plaintiff was seen at the hospital by Dr. Glenn Schmitz shortly before 9:30 p. m. on the evening of the accident, and the doctor's impression was that the patient was obviously intoxicated. His tes-

timony was that his breath had a heavy odor. He then defined the intoxication as being moderate; that he could tell that he was intoxicated by the smell of alcohol and his general demeanor. The nurse's notes, according to the hospital record, say nothing about intoxication or the smell of alcohol on patient's admittance. The doctor had no opinion as to whether the "obvious intoxication" was caused by more than two beers. The plaintiff admits to having consumed two or three bottles of beer during the day before going to Opole for groceries at 7 p. m. The doctor testified, however, that this man had some alcohol in his system and that because of that fact he, as his doctor, decided to delay the use of anesthesia. He testified that very little alcohol is required to make one an immediate anesthetic risk. We find, however, from the doctor's own testimony, that he performed no chemical or other tests to determine the amount of intoxication and he admitted that the two or three bottles of beer consumed could have caused the heavy odor plaintiff had on his breath. The doctor was asked the question "would it not be fair to say that this alcoholism, obvious intoxication that you found, entered into your calculations, was obviously considerable more than the two beers you just heard he expressed he took?" and the doctor answered "I have no opinion on that at all."

The plaintiff denied that he was intoxicated. He testified that he had spent the day at home and not at work because of a cut in his heel. He himself testified that he had supper around six o'clock and after supper washed up; that he lay down until about seven o'clock and then started out for Opole to get groceries. There was the corroboration of this testimony by his daughter. He testified that he had had two or three beers at home during the day.

Reliance is placed by the defendants on the testimony of neighbors of defendant Ben Czech, Mr. and Mrs. Kostebra, who were well acquainted with both the plaintiff and the defendants for many years. They testified that they saw the plaintiff in a grocery store at Opole at ten minutes before 6 p. m. on the evening of the accident; that they exchanged greetings with him but did not notice anything unusual about him; that when they went to their car the plaintiff was already in his car which was parked behind theirs in

such a manner that they couldn't get their car out. Mr. Kostebra testified that he went back into the store and had to wait about ten minutes for the plaintiff to move out. They testified that they followed the plaintiff's car for about one mile and that he was zigzagging from one side of the road to the other so that they did not dare attempt to pass him.

There is a decided conflict between the plaintiff's testimony, corroborated by his daughter, and that of the Kostebras. The plaintiff's daughter, a novice in the convent at St. Benedict's Convent, St. Joseph, Minnesota, testified that she and her father had supper together around six o'clock on the evening of the accident; that after supper her father went to bed for a while; and that around seven o'clock he got up and went to Opole to get groceries. The daughter had come home around five o'clock that evening and at that time the plaintiff was in bed. She stated that he did not leave the house until seven o'clock. There was no cross-examination of this witness.

Even if the defendants' witnesses were telling the truth about an occurrence of this nature, testifying as they did at a much later date, they might have been confused as to the time or the day in question and the jury might well have so concluded in passing upon this conflict in the evidence.

The evidence that was offered to the effect that the plaintiff was under the influence of alcohol presents perhaps the most difficult question here. He was under the law required to exercise the same degree of care as that required of a sober person. If he was under the influence of liquor, it was competent to show impairment of his powers of observation, if any, and the likelihood of impaired recollection. Olstad v. Fahse, 204 Minn. 118, 282 N. W. 694; 36 Minn. L. Rev. 738. On the question of his contributory negligence, if his intoxication in any degree contributed proximately to his injury, it was admissible as evidence of contributory negligence; but unless it did so contribute or unless he failed to exercise the degree of care required of a sober person, the mere fact that he may have been under the influence of alcohol did not in and of itself constitute contributory negligence. We believe that the conflict in the testimony is such

on the question of intoxication that the trial court properly left its determination as a fact question to the jury.

A careful review of the doctor's testimony as a whole does not necessarily indicate that the plaintiff had consumed more than two or three beers as testified to by him and that this constituted enough alcohol to cause an odor on his breath more than ordinarily noticeable in a warm room in ordinary conversation. The doctor in his testimony had no opinion as to whether what he called obvious intoxication had been caused by more than two or three beers and he testified that two or three beers would cause the odor he smelled. The doctor's statement was also based in part on the plaintiff's general demeanor, but the jury may have concluded that this general demeanor was due as much or more to the shock caused by the plaintiff's injury than it was to his intoxication. The term "acute alcoholic intoxication," which was in the medical report, according to the doctor, did not refer to the degree of intoxication but only to its duration, and the postponement of the anesthesia was caused not by the amount of alcohol in his system but merely by the fact that he had had some alcoholic beverage to drink. The jury may have concluded that no serious degree of intoxication was indicated.

The defendants further contend that the only explanation of plaintiff's complete failure to exercise even the slightest degree of care for his own safety was his intoxication, but an analysis of the plaintiff's conduct at the scene of the collision, which brings us to the other points raised in their brief, does not show such utter disregard for safety; indeed, this analysis brings to light and shows further evidence from which a jury could reasonably infer that the plaintiff was in control of his faculties and exercising care commensurate with that reasonably exercised by the ordinary person of his age, circumstances, and experience.

■ Defendants contend that the plaintiff was guilty of contributory negligence as a matter of law on the assumption, viewing the record as a whole, that he stopped his vehicle voluntarily on the traveled portion of the highway so as to obstruct traffic from all directions when he easily could have stopped on the right shoulder; that he thereafter failed to move his vehicle from the dangerous

position in which he had voluntarily left it; and furthermore that he remained by his darkened vehicle while defendants' car bore down on him. Defendants further contend that plaintiff's conduct was in violation of M. S. A. 169.32 and that there was no evidence to oppose the prima facie case of negligence presented by proof of the violation of this statute other than that he claims to have become excited when the lights on his car went out and the darkness of the night with no moon visible became disconcerting to him. Defendants assert that, this violation being unexplained, the court below should have directed a verdict for defendants under the authority of Wojtowicz v. Belden, 211 Minn. 461, 1 N. W. (2d) 409. In that case this court dealt with that section of the highway traffic regulations which provides that (§ 169.21, subd. 5) : "Pedestrians when walking along a roadway shall walk near the left side of the roadway giving way to oncoming traffic." The plaintiff, in that case, was a pedestrian upon a divided highway. He violated the requirement that the pedestrian is not only to walk near the left side but also give way to oncoming traffic. Under the statute he must go against and not with the traffic. There the plaintiff crossed over to the center line and continued northerly with the traffic, not against it, without offering any reasonable excuse due to snow or other highway conditions as justification for his conduct violative of the applicable statutory rule. We do not find that decision controlling here.

The plaintiff, in the instant case, contends that there was reasonable excuse for being on what was the wrong portion of the highway under § 169.32. The first paragraph of that section reads as follows:

"Upon any highway outside of a business or residence district no person shall stop, park, or leave standing any vehicle, whether attended or unattended, upon the paved or improved or main traveled part of the highway when it is practical to stop, park, or so leave such vehicle off such part of said highway, but in every event a clear and unobstructed width of at least 20 feet of such part of the highway opposite such standing vehicle shall be left for the free passage of other vehicles and a clear view of such stopped vehicle be

available from a distance of 200 feet in each direction upon such highway."

Plaintiff contends that the second paragraph of § 169.32, which provides as follows:

"This section shall not apply to the driver of any vehicle which is disabled while on the paved or improved or main traveled portion of a highway in such a manner and to such extent that it is impossible to avoid stopping and temporarily leaving such disabled vehicle in such position."

and is sometimes known as the disabled-car statute, is applicable to his situation, protective of his rights as a motorist under the circumstances with which he was confronted, and entitles him upon the record as a whole to have the alleged defense of his contributory negligence submitted to a jury for determination as a fact question. He submits that, under the disabling circumstances disclosed by the record, he cannot be held guilty of contributory negligence as a matter of law. He denies that he was guilty of any negligence whatsoever under the circumstances. It appears that the jury so concluded.

The disability of plaintiff's car is established by the record. What we have to consider is the conduct of plaintiff, a man 56 years of age, a machinist by trade, under all the circumstances disclosed by the evidence. The disabled-car provision of the statute was analyzed in the case of Geisen v. Luce, 185 Minn. 479, 483, 242 N. W. 8, 10, where this court, before proceeding to a discussion of the relative fact claims of the parties in that case, asked the question: "Was it 'impossible to avoid stopping and temporarily leaving such vehicle in such position?'" This court then went on to a discussion of the application of the second section of what is now § 169.32 as it pertained to the facts in that case, and we quote from the opinion (185 Minn. 483, 242 N. W. 10):

"The words 'such position' at the end of § 2720-24(c) must not be construed as meaning that if possible for the car to have been moved at all it would be beyond the protection of the statute. 'Such position' refers back to the words 'on the paved or improved or main

traveled portion of any highway.' The provision that the car must be so disabled 'that it is impossible to avoid * * * temporarily leaving such vehicle in such position' cannot be applied only to cases literally. It cannot always mean that it must be 'impossible' to slightly move the car in order to make subd. (c) applicable. It is difficult to imagine an automobile on the highway so disabled that it would be literally impossible for a man not to be able to move it at all. We think the legislature never intended to have such literal construction applied to this statute. We are of the opinion that the word 'impossible' must be construed as meaning that the car must be disabled to the extent that it is not reasonably practical to move the car so as to leave such 15 feet for the free passage of other cars. This construction seems to be consistent with the holdings of other courts; and under such circumstances the provision that 15 feet shall be left for free passage of other vehicles is not applicable. [Citations omitted.]

"We do not believe that we should indulge in the improbable and conjectural theory that Ferris might have solicited and obtained sufficient man-power from the traveling public to move the car a sufficient distance to where he might have placed it so as to leave the required 15 feet. He undertook, and we think reasonably so, to take care of his own trouble without bothering and delaying others. The evidence, including of course all the circumstances, does not permit a finding that it was reasonably practicable for Ferris to move his car from the paved road so as to leave 15 feet for the free passage of other vehicles. There is no evidence in the case to support the conclusion that he could have done this. We are unable to find any evidence in the record which permits the jury to say that this situation was not within the contemplation of subd. (c) as so construed by us. We are of the opinion that the record shows that the Ferris car was as a matter of law disabled within the meaning of 1 Mason, 1927, § 2720-24(c)."

This court held that upon the facts stated in that opinion the standing of an automobile on the highway was not the proximate cause of plaintiff's injury, which he received through the negligent

operation of an automobile in which he was riding as a guest while the driver was attempting to pass the standing car.

Under the circumstances we believe that facts present themselves for determination in the instant case as follows: Was plaintiff's automobile standing or parked on the highway disabled and under the protection of the second paragraph of § 169.32? Was the standing of plaintiff's automobile on the highway a proximate cause of the collision, resulting damage, and injuries so as to charge the plaintiff with contributory negligence as a matter of law?

The plaintiff in the case at bar cites the case of Barrett v. Nash Finch Co. 228 Minn. 156, 36 N. W. (2d) 526, in connection with the assertion that whether he should or should not have stopped as he did was a question for the jury and that, even if he was negligent in this risk, his negligence ceased to be a proximate cause having been reduced to a condition only by virtue of the lapse of time. The plaintiff testified that the time consumed in carrying out the activities he related after his car had come to a stop was approximately 15 minutes or so. He was not sure of the time that had elapsed for as he said: "I would not know, I started running around quick." In the Barrett case, Mr. Justice Peterson makes it clear that the prima-facie-evidence-of-negligence-only rule evinces a legislative intention that negligence shall be the ground of recovery for acts which the statute declares unlawful and that a violation of the act shall be only prima facie evidence of negligence. He then goes on to state that in order to constitute actionable negligence or contributory negligence as a defense, the violation of statute upon which the claim of negligence is predicated must, the same as negligence independent of statute, be the proximate cause of the harm for which recovery is sought. In that case the court held that, where the driver of an automobile plainly sees another automobile upon the highway in time to avoid a collision and negligently fails to do so, the driver's negligence is an intervening, efficient, and proximate cause of the collision, insulating the prior negligence of the driver of the automobile with which he collided and reducing it to a mere occasion or condition.

It appears that the jury reached a similar conclusion in this case where it found defendants negligent upon the evidence and under the charge of the court below and where it likewise did not find the plaintiff and owner of the standing automobile guilty of negligence as a contributing cause. The evidence is clear that the defendant Ben Czech in this case admitted and testified to being able to see on the night in question at least 200 feet ahead and that his car was operating satisfactorily, mechanically, and that his headlights were on and in working order. It is equally clear from the evidence that the road in question was a lightly traveled highway and that the first car to approach the standing vehicle passed without difficulty, even though it may be said that he had the benefit of plaintiff's waving flashlight. Defendant's testimony, however, is to the effect that he did not see the standing car on the highway until he was within approximately 100 feet of it, and there appears to have been no appreciable slackening of the speed of 35 to 40 miles per hour before the collision. The defendant testified that he first swung into the left lane where there was an eight-foot clearance on the graveled highway but that he then changed his mind and swung back to the other side for the reason, so he claims, that the plaintiff was standing in his way in the eight-foot clearance. The evidence would seem to be at least equally convincing that plaintiff's position was in front of the hood of the automobile where he was untangling some emergency lights preparatory to further efforts to get the lights back on his automobile and to clear the highway.

■ In contending that the plaintiff was guilty of contributory negligence as a matter of law because he stood by his stalled car watching the defendant approach until it was too late to escape, the defendants rely primarily on two cases, namely, Dragotis v. Kennedy, 190 Minn. 128, 250 N. W. 804, and Henry v. Hallquist, 226 Minn. 39, 31 N. W. (2d) 641. A directed verdict for defendants was upheld in the Dragotis case on the ground of contributory negligence, but the facts in that case show that plaintiff's driver made no effort to get his automobile onto the shoulder, which had adequate width for that purpose. This court also found in that case that the plaintiff actively participated in his driver's conduct. Plaintiff

then stood near the center of the pavement "ignoring or deliberately risking the danger" of approaching traffic.

In Henry v. Hallquist, *supra*, the court upheld a directed verdict awarded defendant on the ground that plaintiff was guilty of contributory negligence as a matter of law, and it was found by this court that the undisputed facts showed that plaintiff made no attempt to move his car onto the shoulder where there was ample room to park and that he got out of his car and proceeded to remove the snow from his windshield "without observing approaching traffic." The undisputed evidence in that case showed that during a blinding snowstorm plaintiff got out of his car on the pavement, gave one look to the rear, and then continued to work on his windshield all the way from two to four minutes without looking again to see if anyone was coming up from the rear on a heavily traveled highway.

In the instant case there was an excuse for stopping on the highway. Visibility was fair to the extent that the weather was clear even though no moon was visible; approaching motorists could see the stalled car for 200 feet and could pass it on one side. Furthermore, the plaintiff kept a lookout for approaching cars, and he ran away from the spot near the hood as soon as he realized that the defendant was not going to pass him on the west side. All the while that he watched the defendants' car approaching and while eight feet of the road surface inside the shoulder to the west was free and clear for passing, he was trying to get a trouble light operating. These factors clearly distinguish the instant case from the Dragotis and Henry cases and make the question of the plaintiff's negligence, in remaining with the standing car without going for help as long as he did, a fact question for the jury.

We are of the opinion that the facts in the case at bar differ materially from the facts in those cases and that the rule there applied is not applicable here. We believe that the following cases are applicable, for, as commonly observed in the run-of-the-mill automobile accident cases, there is here a conflict in the testimony on every issue urged by the defendants as a basis for finding the plaintiff guilty of contributory negligence as a matter of law: Anderson v.

Johnson, 208 Minn. 373, 294 N. W. 224; Cowperthwait v. Tadsen, 212 Minn. 49, 2 N. W. (2d) 429; Duff v. Bemidji Motor Service Co. 210 Minn. 456, 299 N. W. 196; Corridan v. Agranoff, 210 Minn. 237, 297 N. W. 759; LeMire v. Nelson, 238 Minn. 501, 58 N. W. (2d) 189.

■ It is only in the clearest of cases, where the facts are undisputed and it is plain that all reasonable men can draw but one conclusion from them, that the question for determination becomes one of law for the court. Aubin v. Duluth St. Ry. Co. 169 Minn. 342, 211 N. W. 580; Engstrom v. De Witt (8 Cir.) 58 F. (2d) 137; Nygren v. Minneapolis St. Ry. Co. 241 Minn. 485, 63 N. W. (2d) 560; Johnson v. Mancilman, 241 Minn. 461, 63 N. W. (2d) 569; Martin v. Reibel, 227 Minn. 106, 34 N. W. (2d) 290; Spencer v. Johnson, 203 Minn. 402, 281 N. W. 879; Coffman v. Kummer, 179 Minn. 120, 228 N. W. 751.

The only question for consideration in the case at bar is whether it clearly appears from the record that the plaintiff is not entitled to recover. We must determine whether, under the record as a whole, the alleged contributory negligence of the plaintiff was a question of law for the court or one of fact for the jury. The question of defendants' negligence and plaintiff's contributory negligence was submitted to a jury in the court below and each party was likewise given the benefit of the emergency rule under the charge of the court as to the conduct of each of them in the operation of their respective automobiles. We have come to the conclusion that both the negligence of the defendant and the contributory negligence of the plaintiff presented a fact question for the jury.

Affirmed.