## H. C. NELSON AND ANOTHER, COPARTNERS d. b. a. NELSON INVESTMENT COMPANY, v. FRED E. TRIPP AND OTHERS, INDIVIDUALLY AND AS COPARTNERS d. b. a. TRIPP CONSTRUCTION COMPANY.

118 N. W. (2d) 805.

November 30, 1962—No. 38,589.

*James B. Lund,* for appellants.
*William J. Nierengarten,* for respondents.

NELSON, JUSTICE.
Appeal by Fred E. Tripp, Luverne F. Tripp, and Raymond L.

Tripp, copartners doing business as Tripp Construction Company, from a judgment against them as defendants in an action to recover $2,400 allegedly assigned by them to plaintiffs, H. C. Nelson and R. B. Nelson, copartners doing business as Nelson Investment Company.

Early in 1954 the State of Minnesota contracted with H. & R. Construction Company, hereafter referred to as H. & R., for grading a stretch of highway between Shakopee and Jordan. Subsequently H. & R. entered into a standard form subcontract with defendant Fred E. Tripp for certain work to be done by defendants on the project. Plaintiffs acted as financial agents for H. & R. during construction of the highway, receiving payments made by the state as the work was done and disbursing sums to creditors of H. & R. pursuant to partial estimate vouchers received from the state.

On May 14, 1954, plaintiffs sold a "LaPlant Choate TS-200 Motor Scraper"—a machine for loading and moving dirt—to defendants for a total price of $16,118 under a conditional sales contract which provided for a downpayment of $2,400 to be made by "assignment" and for monthly payments of the balance of $13,718. An assignment executed the same day assigned to plaintiffs "the first Twenty Four Hundred Dollars ($2400.00) of funds due or to become due * * * from [H. & R.]" for defendants' work on the highway project and another construction job they were performing for H. & R.

Plaintiffs subsequently assigned the conditional sales contract to Industrial Credit Company, which in turn assigned it to First Acceptance Corporation. On September 13, 1956, that assignee executed a satisfaction acknowledging the receipt of $13,718 and reciting that the contract had been "fully paid and satisfied." It is clear from this instrument that plaintiffs never assigned the right to collect the downpayment of $2,400.

After execution of the conditional sales contract the equipment was turned over to defendants. They have never returned it to plaintiffs, who instituted this action to recover the amount of the downpayment.

The record indicates that plaintiffs as financial agents for H. & R. paid out $366,079 to its creditors on the highway project and the other construction job in which defendants were subcontractors. One of

plaintiffs testified that these disbursements were made at the direction of H. & R. He also testified that plaintiffs received only $289,997.91 and thus paid out $76,081.09 in behalf of their principal in excess of the amounts they received. Defendants, however, contend that some of the money plaintiffs received was paid H. & R. by the state for work which defendants had performed; that plaintiffs knew this; and that they could and did apply $2,400, pursuant to the assignment, in payment of the downpayment. This plaintiffs deny. At the time this action was commenced, they held no funds belonging to H. & R.

The projects involved here were completed in July 1954. The record indicates that prior to their completion defendants admitted that plaintiffs were insisting upon payment of the $2,400 downpayment. Even after their completion, plaintiffs continued to insist that they had not received payment pursuant to the assignment. There is testimony that in November 1954 plaintiffs received a letter from defendants' counsel inquiring whether the $2,400 had been paid. Plaintiffs informed him it had not been. They again notified defendants as late as February 15, 1960, that the payment had not been made. Defendants, however, claimed that plaintiffs had received payment.

About the time the projects were completed, H. & R. assigned all of its accounts and property to its bonding company, which eventually paid H. & R.'s subcontractors for the work done by them. Defendants were paid successive checks of $5,000 and $1,500 before the end of 1954 and in January 1955 presented a formal claim to the bonding company, specifying therein the items of work done on the highway project for which payment had not been received. In December 1955 the bonding company paid that claim by a check which recited that it was "in full discharge of all liability" of H. & R. arising out of the highway project. The bonding company also paid defendants' claim against H. & R. for their work on the other construction job at that time.

Plaintiffs brought suit on three counts: An express contract; an implied contract; and a common count for money had and received.

Although the case was tried before a jury, the parties stipulated that the court should determine all issues. It ordered judgment for

plaintiffs for the amount of the downpayment, determining that it had become due when defendants received the final payment of their claims against H. & R.

1-2. Defendants suggest that the abstract question of law before us on this appeal is: "Did receipt of cash by plaintiff [from H. & R.] constitute payment?" However, since there was no motion for a new trial, the only issue presented on this appeal is whether the evidence sustains the trial court's findings and whether those findings support the conclusions of law and the judgment. Miller v. Snedeker, 257 Minn. 204, 101 N. W. (2d) 213. We have said that in reviewing the evidence—

"* * * It is the duty of [the] appellate court, of course, fully and fairly to consider such evidence, but so far only as is necessary to determine beyond question that it reasonably tends to support the findings; not that the trial court would not have been justified in making findings thereon in appellant's favor, but that the findings made are supported by evidence reasonably tending to establish the facts found." Carver v. Bagley, 79 Minn. 114, 115, 81 N. W. 757, 758. ·

Service & Security, Inc. v. St. Paul Federal S. & L. Assn. 211 Minn. 199, 300 N. W. 811.

That view of the evidence most favorable to the prevailing party must be accepted. We are not required to go into a lengthy and detailed discussion of the evidence to justify the findings of the trial court, nor is it within our province to go into such discussion to prove or demonstrate their correctness. Our duty will have been fully performed when we have fairly considered all of the evidence and from it have determined that it reasonably supports the findings. As was stated in Carver v. Bagley, *supra,* the question is not whether the trial court would have been justified in making findings in appellant's favor but whether the findings made are supported by evidence reasonably tending to establish the facts found. Hynan v. First Trust Co. 258 Minn. 118, 103 N. W. (2d) 209; Ehmke v. Hill, 236 Minn. 60, 51 N. W. (2d) 811. See, Kedrowski v. Czech, 244 Minn. 111, 69 N. W. (2d) 337; Taylor v. Northern States Power Co. 196 Minn. 22, 264 N. W.

139; Smith v. Otto Hendrickson Post 212, 241 Minn. 46, 62 N. W. (2d) 354.

3. In their answer defendants alleged that the complaint fails to state a claim against them upon which relief can be granted. They admitted, however, that they promised to pay plaintiffs $16,118 for the earth scraper and that it was reasonably worth that sum. They alleged payment by the satisfaction executed by First Acceptance Corporation. However, they ignore the fact that this satisfaction does not indicate payment of any greater sum than $13,718. Defendants also pleaded that they "furnished consideration in the sum of $2,400 for the downpayment" by services to H. & R. worth more than that amount. They did not plead estoppel, failure of consideration, or other affirmative defenses. Rule 8.03, Rules of Civil Procedure. They contend that this action is to recover a claimed unpaid balance for goods sold and delivered by plaintiffs as vendors and principals; that the conditional sales contract between the parties is controlling; and that the controversy does not involve questions of agency, enrichment, private dealings between plaintiffs and H. & R., or profit or loss to plaintiffs by reason of such dealings. The record as a whole does not support these contentions.

The rule is well established that an action for money had and received will lie when a person has possession of money which in equity and good conscience belongs to another and ought to be delivered to him. An equitable remedy to compel one unjustly enriched at the expense of another to disgorge, the action is not restricted by technical rules. It is founded on the principle that no one ought to unjustly enrich himself at the expense of another, and the gist of the action is that the defendant has received money which in equity and good conscience should have been paid to plaintiff and under such circumstances ought, by the ties of natural justice, to pay over. The duty to repay arises from the moral obligation of every person to make restitution when he has received without consideration the money of another which the holder has no right to retain. 12 Dunnell, Dig. (3 ed.) § 6128.

Thus, if plaintiffs did not receive payment from the funds they handled as financial agents for H. & R., they may demand payment

from defendants on the ground of unjust enrichment. Clearly the basic issue is whether the finding implicitly made by the trial court that the $2,400 downpayment was never made to plaintiffs finds reasonable support in the evidence.

After the parties rested, the trial court commented on the evidence as follows:

"* * * the plaintiffs sold a scraper to the defendants, and * * * the defendants * * * agreed to make a down payment of. $2,400.00, and they gave an assignment to the plaintiffs * * * against the H and R Construction Company. * * * it appears without dispute here that the Nelsons * * * were acting * * * as [fiscal] agents for H and R Construction Company * * * and they collected from the State of Minnesota the total amount that the H and R Construction Company had coming for this road project, and they deposited it, and they claim they paid it out * * *. But, they claim they never did take out the $2,400.00 that they had coming from Tripps. * * * the testimony is that they went into bankruptcy and left the plaintiff holding the sack for some $76,000.00, * * *. So, Mr. Tripp did this, he had been paid $6,500.00 on this job by H and R * * * and he filed a claim against the bonding company for the total amount that he was unpaid on the job, and he collected that from the Seaboard Company. There is no dispute about that. So he collected the $2,400.00 that was supposed to have been paid by H and R Company to the plaintiffs."

On the basis of the foregoing facts the trial court determined the issues in favor of plaintiffs and ordered judgment for the amount of the downpayment. We think the record amply supports the findings of fact and that those findings support the conclusions of law and the judgment.

Affirmed.