Craig R. HILLE, Appellant,

v.

COUNTY OF WRIGHT, Respondent.

No. C5-86-783.

Court of Appeals of Minnesota.

Feb. 3, 1987.

Review Denied April 17, 1987.

Peter J. Krieser, Krieser & Auron, Minneapolis, for appellant.

Michael J. Ford, Quinlivan, Sherwood, Spellacy & Tarvestad, P.A., St. Cloud, for respondent.

Heard, considered and decided by HUSPENI, P.J., and SEDGWICK and LANSING, JJ.

## OPINION

LANSING, Judge.

This appeal is from entry of judgment for Wright County in Craig Hille's action for personal injuries suffered in the Wright County jail. We affirm.

## FACTS

Craig Hille was stopped on December 9, 1983, on suspicion of driving under the influence of alcohol. He failed the field sobriety tests and was described by Deputy Heaton, the arresting officer, as "highly intoxicated." A breathalyzer test taken at 6:33 p.m. at the Wright County jail showed a blood alcohol content of .20.

Deputy Heaton began the booking sheet on Hille at 6:50 p.m. Heaton did not contact a friend or relative to pick up Hille from the jail. He turned Hille over to Deputy Gerald Mitlyng at 7:00 or 7:05. Mitlyng, the second-shift jailer, photographed Hille, attempted to fingerprint him, and then placed him in the "overnight" cell block with three other inmates.

The individual cells in the overnight block were left unlocked, with each inmate having access to the common walkway area. Approximately eight to ten feet above the walkway floor, unscreened metal heating duct-work was suspended from the ceiling. Hille crawled up on the duct-work and began kicking it in an attempt to "escape." The other inmates treated this as a joke. Hille fell once and at approximately 8:00 fell again, hitting his head on the floor. The duct-work also fell. Mitlyng, who was in the dispatch area discussing investments and IRAs and trying to sell life insurance to the other deputies, heard the crash and, with the other deputies, went to investigate. Hille was taken to the hospital and then to the St. Cloud Detoxification Center. He suffered a skull fracture and total loss of hearing in one ear.

The watch commander stated Mitlyng was in the dispatch area more than 30 minutes. Deputy Miller estimated Mitlyng was in the dispatch area from 30 to 45 minutes. Mitlyng, however, testified he was in the dispatch area only 15 to 20 minutes. Deputy Walker gave a similar estimate. An inmate estimated Hille's activities in the cell block continued for about 30 to 45 minutes. The deputies in the dispatch area heard yelling in the jail and some assumed it was Hille, but only Deputy Walker testified to hearing other noises, such as pounding and rattling of cell bars.

The Wright County jail manual required "[v]isual contact with the [intoxicated] resident every 30 minutes" logged by the jailer on duty. State administrative rules require half-hour checks of all inmates. Minn. Rules pt. 2910.4700H. The daily log-in sheet was not introduced at trial.

Wright County followed a policy of sending intoxicated drivers to the detoxification center at St. Cloud. The detoxification center, however, would not take uncooperative or belligerent persons. All the witnesses agreed that Hille was loud, uncooperative and belligerent.

At trial Hille presented the expert testimony of Joseph Rowan, who had 30 years experience in penal administration and consulting, including jail design and the training of jail staff, in Minnesota and elsewhere. Rowan testified that the Wright County jail, with the exposed heating

ducts, was not a reasonably safe place to incarcerate an intoxicated person.

Rowan, quoting an ABA standard, testified that a detained person who is drunk should be under constant observation. He concluded that the Wright County jail was not adequately staffed because it was unable to provide constant observation. Rowan was not allowed to give an opinion on whether the "observation and monitoring" of Hille met general professional standards. This testimony was excluded because Rowan did not have personal knowledge of the actual monitoring practices of Minnesota county jails.

The trial court concluded that the county was not negligent and that its agents' conduct, whether or not negligent, did not cause Hille's injuries. The court also found that the jail's policy required half-hour periodic checks of intoxicated prisoners and that Hille had engaged in an escape attempt between 7:30 and 8:00 p.m., causing his injuries.

### ISSUES

1. Did the trial court clearly err in finding that the county was not negligent?

2. Did the trial court clearly err in finding the county's acts were not a cause of the injury?

3. Was the trial court's finding of appellant's negligence clearly erroneous?

4. Did the trial court commit reversible error in excluding certain expert testimony?

### ANALYSIS

### I

Hille's complaint alleged the county was negligent in failing to adequately supervise the overnight cell block, failing to make frequent checks, failing to take preventive or restraining measures, and in failing to respond to noises from the cell block. Hille also claimed in a post-trial motion that the county failed to provide a physically safe facility. Evidence at trial raised the issue of whether Hille should have been placed in the overnight cell block. The trial court's findings address only the issue of adequate observation.

When trial is to the court sitting without a jury, the findings of the court are entitled to the same weight on review as a jury verdict. *Rehberger v. Project Plumbing Co., Inc.*, 295 Minn. 577, 578, 205 N.W.2d 126, 127 (1973). The trial court's findings are not to be set aside unless clearly erroneous. *Matter of Estate of Serbus*, 324 N.W.2d 381, 385 (Minn.1982).

■ Courts generally have recognized a duty to take reasonable action to protect prisoners even from self-inflicted injury or suicide. *See, e.g.*, Annotation, 79 A.L.R.3d 1210; *Falkenstein v. City of Bismarck*, 268 N.W.2d 787, 792 (N.D.1978). There is a general duty to protect a person taken into one's custody. *Restatement of Torts* (Second), § 314A. The standard is reasonable care. *See, e.g., Griffis v. Travelers Insurance Co.*, 273 So.2d 523, 526–27 (La. 1973).

The witnesses disagreed on how long Hille remained unobserved by Mitlyng. All witnesses agreed that Hille fell at approximately 8:00 p.m. They did not agree, however, on how long Mitlyng had been at the dispatch desk, or other administrative areas outside the jail area, when the crash was heard. The trial court was in the best position to resolve this conflict, which involved a determination of credibility.

There was also disagreement on whether those in the dispatch area heard noises other than Hille's yelling before he fell. Although Rowan, Hille's expert witness, testified that any noises should have been immediately checked, there was evidence Hille was almost continually yelling, and one deputy stated only significant changes in noise level warranted checking.

■ Even though the trial court's findings on adequate observation are not clearly erroneous, placing Hille in the general jail population in a cell block with exposed ducts, without significant measures to prevent injury, presents a separate basis for negligence. Although this issue was not

fully pled in the complaint, it was raised at trial. Rowan testified that Hille should have been placed in a locked cell, either under the observation of the other inmates or directly observable by the jailer from his office. Rowan testified that the exposed heating duct was below standards for a jail. Minnesota, however, does not have administrative standards for *existing* jail facilities. *Cf.* Minn.Rules pt. 2900.0600, subp. 7 (no prisoner access to heating fixtures in new facilities). The jail's "drunk tank," designed to minimize the possibility of self-inflicted as well as accidental injury, had been turned into a library and exercise room.

There is a risk involved in confining highly intoxicated, belligerent persons in common areas inadequate for that purpose, even if they do not violate applicable building standards. *See Hall v. Midwest Bottled Gas Distributors, Inc.*, 532 S.W.2d 449, 451 (Ky.1975) (gas line exposed on common cell area broken by very intoxicated prisoner). Because of the restrictive policy of the detoxification center, the county was taking into custody only the most difficult and belligerent drunk drivers. Yet it had no separate facilities or significant preventive measures for handling them. The presence of other prisoners may, to some extent, have lessened the risk, but did not satisfy the standard of care.

## II

■ The trial court found no causation, apparently treating Hille's "escape" attempt as a superseding cause. In order to be a superseding cause, an event must not be reasonably foreseeable. *Regan v. Stromberg*, 285 N.W.2d 97, 100 (Minn. 1979).

■ Even if Hille's reaction to confinement were considered an escape attempt, the criminal act of another, if reasonably foreseeable, is not a superseding cause. *Hilligoss v. Cross Companies*, 304 Minn. 546, 547, 228 N.W.2d 585, 586 (1975). If there is a generally foreseeable risk of harm to the highly intoxicated Hille, it is

not necessary that the jailers foresee his specific act of climbing on the air duct. *See Rieger v. Zackoski*, 321 N.W.2d 16, 21 (Minn.1982) (specific conduct of third party need not be foreseeable). Hille's loss of self-control was foreseeable as a "normal consequence" of incarceration in his inebriated condition. *Id.*

## III

Hille contends the trial court's finding that he was negligent is contrary to law. He argues that he was so intoxicated that he was unable to form the intent required for negligence, that the county had the "last clear chance" to avoid injury, and that its "willful and wanton negligence" bars the claim of comparative fault. Alternatively, he argues that statutory regulations impose on the county absolute liability for his injuries.

■ The doctrine of "last clear chance," or "discovered peril," does not apply because Hille's "position of danger" was not his intoxicated state, but his position on the heating duct. *See, e.g., Thorn v. Glass Depot*, 373 N.W.2d 799, 805 (Minn. Ct.App.1985), *pet. for rev. denied* (Minn. Nov. 1, 1985) (intoxicated pedestrian's dangerous position was his presence in the traffic lane of the highway). For the same reason, there was no "willful and wanton" negligence. The exact risk of harm was not known or discovered by the county prior to the injury.

■ Hille's negligence is not a defense if a statute imposes absolute liability. The statute Hille cites, however, establishes only a general duty of *attendance* owed to all prisoners. Minn.Stat. § 641.01 (1984). It establishes no standard of observation, monitoring, or placement of prisoners.

■ The trial court's finding that Hille was negligent is supported by the evidence. A voluntarily intoxicated person is required to exercise the same degree of care for himself as a sober individual. *Kedrowski v. Czech*, 244 Minn. 111, 118, 69 N.W.2d 337, 342 (1955). The apportionment of negligence between the parties is

generally for the finder of fact, unless there is no dispute in the evidence and the factfinder can come to only one conclusion. *Riley v. Lake*, 295 Minn. 43, 58, 203 N.W.2d 331, 340 (1972). The trial court, having found no causation, did not apportion the negligence. *See Ferguson v. Northern States Power Co.*, 307 Minn. 26, 35, 239 N.W.2d 190, 196 (1976) (under comparative negligence law, causal negligence is compared). Having found error in the causation and negligence findings, however, we must address the apportionment of negligence. We believe the evidence leads inescapably to the conclusion that Hille's negligence was greater than that of the county.

There is no dispute in the evidence on Hille's detention in the overnight cell block or the precautionary measures taken. The observation of other prisoners was a helpful but insufficient preventive measure. Given that observation, however, and the trial court's finding that Hille was checked at half-hour intervals, we conclude that the county's negligence was, as a matter of law, less than Hille's negligence. In reaching that conclusion, we note the highly unusual nature of Hille's actions. Not only was he climbing on the duct-work, he was also kicking vigorously the sections on which he was sitting.

### IV

The trial court excluded testimony from Rowan on a possible violation of the applicable standard of "observation and monitoring" of inmates. Rowan was allowed to express his opinion of the physical facility, specifically the exposed air duct in the overnight cell block, and of the proper observation of an intoxicated prisoner. He stated the Wright County jail was not adequately staffed.

Rowan had trained jail personnel in Minnesota, but had not monitored jail practices. Practical experience is one qualification for an expert witness. *See Reinhardt v. Colton*, 337 N.W.2d 88, 93 (Minn. 1983) (pathologist could not testify on methods of treatment). The trial court was within its discretion in requiring it here, where Rowan had already testified on administrative and advisory standards.

### DECISION

The trial court erred in finding the county was not causally negligent. Appellant's negligence, however, was, as a matter of law, greater than that of the county. There was no error in excluding expert testimony.

Affirmed.