Wilhelmenia HALL, Administratrix of the Estate of Clarence L. Hall, Deceased, and Thomas Hall, Administrator of the Estate of John Franklin Gilbert, Deceased, Appellants,

v.

MIDWEST BOTTLED GAS DISTRIBUTORS, INC., et al., Appellees.

Court of Appeals of Kentucky.

Dec. 12, 1975.

Rehearing Denied March 5, 1976.

Charles J. Schear, A. Berry Howe, Newport, Donald L. Stepner, Covington, for appellants.

William O. Bertelsman, Newport, W. Marvin Davis, Edwin A. Monroe, Jr., Falmouth, for appellees.

STERNBERG, Justice.

The personal representative of the estate of Clarence L. Hall brought an action alleging that the negligence of appellees Midwest Bottled Gas Distributors, Inc., County Jailer Clyde Hamilton, and Assistant County Jailer Hazel Hamilton resulted in the death of his intestate. A similar action was brought by the personal representative of the estate of John Franklin Gilbert against Midwest Bottled Gas Distributors, Inc., Jailer Clyde Hamilton, named members of the Fiscal Court of Pendleton County, Kentucky, and Pendleton County, Kentucky. The two suits, although brought separately, were consolidated by the Pendleton Circuit Court.

The circuit judge sustained the defendants' motions for summary judgment and dismissed each of the complaints on the theory that there was no genuine issue as to any material fact and that the defendants were entitled to judgment as a matter of law. CR 56.03. This appeal is from that judgment. We affirm the judgment as to appellees Pendleton County, Kentucky, county judge, members of the fiscal court, and Midwest Bottled Gas Distributors, Inc. We reverse the judgment in favor of appellees jailer and assistant jailer.

On June 1, 1968, Officer Ben Schrader, of the Kentucky State Police, observed an automobile being driven in an erratic manner by Theodore Payne. The officer stopped the vehicle and arrested Payne for driving while intoxicated. He also arrested Clarence Hall, a passenger, for public intoxication. Hall was very passive; however, Payne was quite belligerent. The officer was forced to handcuff him, but even this did not restrain Payne from shouting belligerent comments. At the jail Payne was unhandcuffed. Hazel Hamilton, assistant county jailer, placed him and Hall in a common-cell area ("bull-pen") with John Gilbert, another prisoner who was already confined in that area of the jail. Once in the cell Payne continued to act disorderly; Hall lay quietly on a cot; and Gilbert remained orderly.

Sidney "Snip" Owens, who was visiting the daughter of Jailer Hamilton, was helping with the chores of the evening meal at the jail shortly after Payne and Hall were brought to the jail. When Owens went into the area of confinement to retrieve some dirty glasses, he observed that the line leading to the LP gas heater unit, located in the area where the prisoners were confined, had been broken. Upon observing the broken gas line Owens left the cell area to inform the jailer of the damage. As Owens returned to the area to evacuate the prisoners, an explosion occurred. Following the explosion he unlocked the cell block and then made his escape from the burning building.

It was discovered that Payne had broken a gas line. No motive for his action was apparent.

Hall, Payne, and Gilbert escaped from the burning jail, but all died shortly thereafter as a result of burns which they had received during the explosion and fire.

The heating unit which exploded had been installed in January, 1956 by Midwest Bottled Gas Distributors, Inc., pursuant to a contract with Pendleton County. A storage tank to hold the LP gas was placed outside the jail building. A shut-off valve was located at the top of the tank. Three-eighths inch copper tubing ran underground for approximately 30 feet from the storage tank to the jail. That pipe was coupled to a three-fourths inch rigid black iron pipe which ran up the outside wall and extended through the wall approximately six inches into the "bull-pen" area of the jail. At this point Midwest attached to the black iron pipe a one-half inch copper tubing which ran 18 inches to the heating unit. The copper tubing and heating unit were installed five feet ten inches above the floor of the jail.

In the Hall complaint it was alleged that negligence by "Midwest Bottled Gas Distributors, Inc. in the installation, service, maintenance, location, repair, handling, use and design" of the LP gas system for the jail caused Hall's death. Further, the complaint alleged that the Jailers Clyde Hamilton and Hazel Hamilton breached their duty of providing for the safety and needs of the prisoners.

The Gilbert complaint alleged that Midwest was negligent in installing and servicing the LP gas system. The complaint further alleged that the jailer, county judge, and the members of the Pendleton County Fiscal Court breached their duty to control and supervise the Pendleton County Jail. Although Pendleton County is a named defendant, there are no allegations in the complaint with respect to the county. The trial court found that Payne's conduct was

an intervening criminal action which alone brought about the explosion, his death, and the deaths of Hall and Gilbert. The court further found that there was no negligence on the part of any of the defendants which contributed to bring about the disaster.

In determining whether the circuit court properly granted the motions for summary judgment, we must first consider whether a genuine issue of material fact existed as to negligence by Midwest in the installation, location, or maintenance of "manually breakable" copper tubing in the "bull-pen" area of the jail. A majority of the members of this court, not including the writer of this opinion, are of the opinion that there was not a genuine issue of material fact which would support a finding of negligence and that the summary judgment for Midwest was proper. Nothing in the record indicates that Midwest violated any state regulations which were in effect at the time of installation. Appellants refer to the *Standards of the National Board of Fire Underwriters for the Installation of Gas Piping and Gas Appliances in Buildings, September 1954,* and point out violations of these standards. However, these regulations had not been adopted by the State of Kentucky at the time of installation. Since these standards were not adopted by the state or by a state administrative agency, violations of them do not show negligence per se.

The next issue to be considered is whether the portion of the summary judgment in favor of the jailer and assistant jailer was granted properly. We must determine if a genuine issue of fact exists as to whether the prisoners were cared for properly.

It is provided by KRS 71.020 that:

"Each jailer shall have the custody, rule and charge of the jail in his county and all persons in the jail and shall keep the same himself or by his deputy or deputies. * * *"

The jailer owes a duty to the prisoner to keep him safe and to protect him from unnecessary harm. 60 Am.Jur.2d, *Penal and Correctional Institutions,* § 17. *Ratliff v. Stanley,* 224 Ky. 819, 7 S.W.2d 230 (1928), imposed a duty on a jailer to exercise reasonable and ordinary care and diligence to prevent unlawful injury to a prisoner placed in his custody. However, the court held that a jailer cannot be negligent for failing to prevent what he could not reasonably anticipate. See *Lamb v. Clark,* 282 Ky. 167, 138 S.W.2d 350 (1940).

The testimony is sufficient to demonstrate a genuine issue of fact as to whether the jailer and assistant jailer reasonably could have anticipated that Payne would present danger to the other prisoners. *Glover v. Hazelwood,* Ky., 387 S.W.2d 600 (1965).

If the jury finds that the duty to protect the prisoners was breached by the jailer or assistant jailer, then one or both of them may be liable for negligence.

Another question to be considered in determining if the summary judgment was granted properly is whether the action by Payne was a superseding cause of the injuries to Hall and Gilbert. If it was, then any negligence by these defendants would not be the legal cause of the injuries. The issue is a question of law to be resolved by the court. *House v. Kellerman,* Ky., 519 S.W.2d 380 (1975). As in that case (519 S.W.2d at 383), we cannot say as a matter of law that the act of a drunken, unruly prisoner in tearing loose the exposed gas line was so extraordinary and unforeseeable as to override the causal significance of the assistant jailer's negligence, if any, in failing to anticipate it.

The acts and conduct of the prisoner Payne were not such as to insulate the jailer or assistant jailer from liability in the event it is determined by a jury that the assistant jailer was negligent.

It should be noted that *American Home Fire Assurance Co. v. Louisville Gas & Electric Co.,* Ky., 307 S.W.2d 562 (1957), cited by

the lower court, is not dispositive of the instant case. In *American Home,* supra, a contractor disconnected a pipeline leading directly from the street main at its connection with the meter, to bleed air from the gas line, but made no attempt to learn if the pipe had been bled previously or if gas was present in the line. He then tightened the union and struck a match to light the gas water heater. An explosion resulted. The court held that the conduct of the contractor, who was not a licensed plumber and had no previous training in handling gas, was the proximate cause of the damage to the home from the explosion and the contractor's action would supersede any negligence chargeable to the gas company, which was not associated with the contractor. In *American Home* the gas company had no duty to foresee the action of an untrained contractor. However, the instant case is distinguishable in that a jury reasonably could find that the assistant jailer should have foreseen the unruly conduct of Payne in the Pendleton County jail. This same distinction applies to *Collins Company v. Rowe,* Ky., 428 S.W.2d 194 (1968).

■ Finally, this court must decide whether the summary judgment in favor of the members of the fiscal court and county judge, each of whom was sued in his official capacity, was granted properly.

KRS 67.080(4) provides that the fiscal court may secure a sufficient jail. In *Spillman v. Beauchamp,* Ky., 362 S.W.2d 33 (1962), we said:

> "The ordinary rule is that a public officer when acting in good faith within the scope of his authority is not personally liable for damages sustained by a member of the public as a result of his action, unless he acted negligently, that is, failed to meet the standard of the ordinarily prudent man. 67 C.J.S. Officers § 125, pp. 417, 418; *J. F. Schneider & Son v. Watt,* Ky., 252 S.W.2d 898. In our opinion this is a proper rule and if under a particular set of facts liability would not exist under this rule liability should not

be imposed on the officer simply because the government cannot be made to pay."

There is no evidence in the record to support a finding that the members of the fiscal court or the county judge acted negligently or failed to meet the standard of the ordinarily prudent man. Therefore, the circuit court properly granted a summary judgment with respect to these appellees.

■ The summary judgment in favor of Pendleton County was proper since no allegations were pleaded concerning this party.

The portion of the summary judgment of the circuit court dismissing the action against the county judge, members of the fiscal court, Pendleton County, and Midwest Bottled Gas Distributors, Inc., is affirmed. In all other respects the judgment is reversed and the case remanded to the trial court for further proceedings consistent with this opinion.

All concur, except JONES, LUKOWSKY and STERNBERG, JJ., who dissent from so much of the opinion as affirms the action of the circuit judge dismissing Midwest Bottled Gas Distributors, Inc.

STERNBERG, J., files herewith a separate dissenting opinion, in which JONES and LUKOWSKY, JJ., join.

STERNBERG, Justice (dissenting).

The heating unit was installed by Midwest in the bull-pen area of the jail in 1958, where it remained without disturbance or relocation until the explosion in June 1968. No question has been raised as to the expertise of the representatives of Midwest or their knowledgeability in the installation, servicing, or caring for LP gas equipment. Midwest has been charged in both the Hall case and the Gilbert case with negligence in the installation and servicing of the gas system. Additional charges have been made by Hall that Midwest also was negligent in maintaining, locating, repairing, handling, use, and design of the system.

The trial court found that there was no genuine issue of any material fact existing as to any negligence on the part of Midwest and dismissed it. This action was affirmed by a majority of this court.

The obligation of Midwest in the installation of the heating unit in the county jail is different from its obligation in installing a heating unit in a person's private residence. The responsibility of Midwest should be correlated with the location of and the use to which the heating unit was to be put. A higher duty rests on Midwest in the installation, servicing, maintaining, locating, repairing, and handling of the heating unit in the bull-pen area of the jail than in a private residence.

In *Fields v. Western Kentucky Gas Company,* Ky., 478 S.W.2d 20 (1972), the court established the duty of a gas supplier to be as follows:

"* * * The defendant gas company is generally held to the standard of ordinary care, provided that care is exercised with regard to the dangerous character of the commodity transported through the company's pipes. * * *"

This duty is further defined in *Union Light, Heat & Power Co. v. Blackwell's Adm'r,* Ky., 291 S.W.2d 539 (1956), where this court said:

"Foresight or reasonable anticipation is the standard of diligence, and precaution a duty where there is reason for apprehension of danger. * * *"

The facts in this case indicate that Midwest chose to locate the heating unit within the bull-pen area and to use easily breakable copper tubing to supply gas to the unit. Also, Midwest failed to relocate the unit or replace the breakable pipe at any time following the initial installation.

Arguably, it was foreseeable that the system, if located in the bull-pen area, would be subjected to abusive treatment by the inmates. A jail is where society incarcerates disorderly persons and those who may be expected to act in an unruly manner. Conceivably, negligence could be found by a jury in the failure of Midwest to locate the unit in a place which could not be reached by the inmates or in the failure to use unbreakable piping. It may very well be that a jury would not believe that the evidence demonstrates negligence by Midwest. However, that is a question for jury determination. On the present record, it cannot be said that no reasonable man could believe otherwise.

So much of the opinion as discusses the legal principles applicable to the question of foreseeability as it applies to the jailer and assistant jailer applies with equal force to Midwest.

In addition to reversing as to the jailer and assistant jailer, I would also reverse as to Midwest.

JONES and LUKOWSKY, JJ., join in this dissent.